No. 91.—JOHN ANDERSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] Where, upon trial of a prisoner for murder, the Court, in his charge, mentions that the counsel for the prisoner had admitted that he was guilty of either murder or voluntary manslaughter, and that they must find him guilty of voluntary manslaughter, but the Court adds, that it was a question for them to decide from the evidence, and that if, from a review of all the testimony, they were not satisfied of his guilt, they must acquit: *Held*, that the effect of such a charge, taken as a whole, was to leave the guilt or innocence of the prisoner with the Jury, to be determined by the evidence.

[2.] The formation and expression of an opinion by a Juror, from rumor, as to the guilt or innocence of the prisoner, is good cause of challenge for favor.   Wherever the objection to a Juror would constitute a sufficient cause of challenge for favor, if discovered before trial, it will prevent a ground for new trial: if not discovered until after verdict, the Juror will be heard in his own vindication.

[3.] Where a motion for a new trial is based upon affidavits, showing that a Juror who had tried the case, had expressed opinions unfavorable to the prisoner, and that his declarations had not been known to the prisoner until after the trial, it is proper that such showing should be accompanied by a similar statement, on oath, made by prisoner's counsel.

[4.] Where such motion is made, on the ground above stated, and the Juror being heard in his vindication, states upon oath, that what he had said was from report, and that, notwithstanding, if the evidence had shown the

prisoner justifiable, he would have acquitted him, or if it had shown him guilty of a less offence, included in the greater crime with which he was charged, he would have found accordingly; and that his verdict was wholly uninfluenced by the expressions used, but was his solemn and honest conviction under the evidence : *Held*, that such statements and explanations are sufficient to show that he was a competent Juror.

[5.] A declaration by a Juror, brought to the attention of the Court, after trial and conviction, that from the general bad character of the prisoner, he had an unfavorable opinion of him, will not be regarded as an acknowledgement of such bias or prejudice as disqualifies, if it be accompanied with explanation, on oath, which shows that the Juror, notwithstanding, was capable of trying the case by the evidence. Such explanation will be received more favorably by the Court if, in its opinion, there is strong and conclusive evidence of the prisoner's guilt in the record.

Murder, in Early Superior Court. Tried before Judge PERKINS, September Term, 1853.

John Anderson was placed upon his trial, under an indictment, charging him with the offence of murder.

The Court, in charging the Jury, among other things, after explaining to them the several offences of murder, voluntary and involuntary manslaughter, added that "The counsel for prisoner had admitted, in argument, that 'the prisoner was guilty of either murder or voluntary manslaughter, and that you are compelled to find him guilty of voluntary manslaughter, and nothing less'; but that was a question for the Jury to decide, from the evidence, whether it was a case of murder or voluntary manslaughter, and of what offence the prisoner was guilty".

To this portion of the charge, counsel for prisoner excepted.

The Jury returned a verdict of "Guilty of Murder".— Whereupon, a new trial was moved, upon the ground that Henry Elliot, one of the Jury, had formed and expressed an opinion against the prisoner, before he was sworn as a Juror, which fact was unknown to the prisoner.

In support of this motion, the prisoner presented his own affidavit, and also that of one John Simmons, to the effect,

that shortly after the death of Thompson, (for whose homicide prisoner was indicted,) Elliot (the Juror) said in his presence, that the community ought to have taken up prisoner and hung him without a trial; and that if he was on the Jury, he would set there and perish to death, or hang him.

The Sol. Gen'l filed, in response, the affidavit of the Juror, exculpating himself, admitting the words charged, but protesting that they were said under excitement, and in no way affected his mind, or biassed him in the discharge of his duty as a Juror; that his verdict was founded and based exclusively upon the evidence, and was given impartially; that he was not sworn on his *voire dire*, or he would have stated his expression of opinion. He admitted that he had an unfavorable opinion of the prisoner, from his general bad character, and that he was prejudiced against the crime with which he was charged.

Also, the affidavit of five other Jurors, asserting that Elliot had expressed no opinion in the Jury Room, until the Jury were charged by the Court, and not then, until a majority of the Jury had expressed an opinion that the prisoner was guilty; and that he evidenced no prejudice or bias against the prisoner.

The Court refused the motion for a new trial, and counsel for prisoner excepted.

Upon these two exceptions, error has been assigned.

H. HOLT, for plaintiff in error.

Sol. Gen. LYON, represented by L. WARREN, for the State.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The objection to the charge of the Court is not well taken. It might have been erroneous for the Court to have told the Jury, that the counsel admitted his client was guilty of either murder or voluntary manslaughter, and they must find him guilty of voluntary manslaughter. But this was not the charge made. The record represents the Court as adding, that it was a question for the Jury to decide, from the evi-

dence, whether he was guilty of murder or voluntary manslaughter, and of what offence he was guilty. And the charge was closed by instruction, that if, from review of all the testimony, they were not satisfied of his guilt, to the exclusion of a reasonable doubt, they must return a verdict of acquittal.

The effect of this charge, as thus presented by the record, was not to instruct the Jury that they must convict of murder or manslaughter, upon the admission of the counsel, but taken as a whole, it left the guilt or innocence of the prisoner to the Jury, to be determined by the evidence.

[2.] A motion for a new trial was submitted and sustained, by affidavits, on the ground that Henry Elliot, one of the Jury who had tried the case, and returned a verdict against the prisoner, had, before the trial, declared, that "The community ought to have taken up Anderson, and hung him without a trial, and that if he, the said Elliot, was on a Jury to try him, he would sit there and perish to death, or hang him"; and that this information had not come to the knowledge of the prisoner, until after the trial. This motion was refused.

In the case of *Monroe vs. The State*, (5 *Ga. R.* 85,) this Court has sanctioned the following positions: 1. That the formation and expression of an opinion, from rumor, is good cause of challenge for favor. 2. That wherever the objection to a Juror would constitute sufficient cause of challenge to the favor, if discovered before trial, it will present a ground for new trial, if not discovered until after verdict. 3. The Juror will be heard in his own vindication.

Other cases might be cited, in support of the correctness of these principles; but they may considered as settled by the case to which I have referred, and which has been, for some years, a leading case in our State on this subject; and I shall not refer to them.

We regard what was said by the Juror, in this case, as being, while unexplained, sufficient to disqualify him. Such remarks must be considered as evidence, *prima facie*, that he did not stand "indifferent, as he stood unsworn".

[3.] We would have been better satisfied, if it had appeared

by affidavit of the prisoner's counsel, that they, too, had no. knowledge, before verdict, of the declarations made by the Juror ; and we think the proper practice to be pursued in such case is, for this statement to be made on oath ; and that a Court will incline more favorably to a showing which has this feature.

We think, too, that the motion would have been strengthen-·ed, if it had appeared by the affidavit, that this Juror had been put upon his *voir dire*, in the usual way, and had shown himself competent by his answers. For the purposes of this case, however, we will consider the showing sufficient ; and that the prisoner would have been entitled to a new trial, but for what appears in the Juror's vindication.

It may be thought, that a rule which allows the Juror this privilege of vindication, by his own oath, will work at disadvantage to the prisoner, as it is highly probable, that a Juror who had rendered a verdict under such circumstances, will be under a very strong bias, to relieve himself from what might be, otherwise, an unpleasant and inconvenient odium, by making a partial showing for himself.

There is force in the suggestion. But what can be done ? Justice requires that the prisoner should be allowed to show that a Juror who has tried his case, had previously expressed himself unfavorably towards him, if this came to his knowledge after the trial. It will, then, be an exceedingly hard case upon the Juror, if he cannot be heard in his own defence.— The charge may be entirely unjust ; or, susceptible of easy and satisfactory explanation. If this cannot be shown or given, a Juror may be at the mercy of any one, who misapprehends, or chooses to misrepresent remarks which have fallen from him, and who is willing to make oath to the same.

Under the operation of such a rule, the situation of a Juror, in a criminal cause, would be scarcely more to be envied, than the condition of the criminal himself.

[4.] In the affidavit which this Juror presents, he swears, that "He never saw the crime committed, nor heard any part of the evidence delivered on oath, but that he merely heard the

report of others, and that upon report he uttered the declaration before alluded to.   He further deposes, that, notwithstanding he had uttered such expressions, he feels that he was prepared to weigh the evidence introduced, and decide according to that; and that he did so decide, without any reference, whatever, to his expressions or opinions, as to what ought to have been done to John Anderson; and that his verdict was wholly uninfluenced by these expressions, or the reports upon which they were based; but that his verdict was his solemn and honest conviction, under the evidence and the charge of the Court".

Had this Juror been put upon triors, and after proof that he had used such language as has been imputed to him, he had made such explanation as that just quoted, it is very plain to us, that he should have been considered a competent Juror.— Upon this motion for new trial, the Court is called on to place itself, as it were, in the position of triors, and thus to determine this question.

We hold, then, that if the Juror was prepared to weigh the evidence and decide according to that, as he says he was, and if he did so decide, without reference to the expressions which he had used, as he says he did, he was above all exception, notwithstanding the declarations which had been made by him.

[5.] We have had more difficulty with the Juror's admission—" That from the general bad character of the prisoner, he had an unfavorable opinion of him".   This looks very like bias—an inclination against the prisoner; so much so, that we are not sure, but that if his guilt had appeared to us at all doubtful, we would have given to him the benefit of the hesitation in our minds, which for a time, this admission created. But on looking to the record, we find evidence of the guilt of the prisoner—strong and conclusive evidence, which marks this murder with features of greater malignity and brutality, and evinces a more striking degree of indurated moral perceptions in the murderer than, happily, are often found in our country.

Under these circumstances, we have accepted the statement

of the Juror, that, notwithstanding his unfavorable opinion of the prisoner, if the evidence had shown that he was justifiable, he would have acquitted, or if the evidence had shown him guilty of a less offence than murder, he would have found accordingly, as a sufficient purgation of his conscience; and, as he seems to have been prepared to do what was right in the premises, we will hold that, in legal contemplation, he was a competent Juror.

This vindication of the Juror, is not without support from the statements made by five of his fellow Jurors, who testify to such demeanor, in the jury-room, as tends to exhibit him in the light of an impartial Juror.

Judgment affirmed.