Rider *vs.* Morrison, *et al.*, Receivers.

(Decided 2nd July, 1880.)

---

Moses Rider *vs.* Robert D. Morrison, and others, Receivers of the Franklin Land and Loan Company, of Baltimore City.

*Unpaid instalments due on Shares of stock—Effect of entry of Cancellation of Stock by the Secretary of the Company—Transfer of Stock to escape Liability on account of Unpaid instalments due thereon—Effect of the Sale of property by a Land and Building Association to a Shareholder— What the Association meant in allowing a particular credit to the purchaser—Power of the Directors of a Corporation in respect of the Unpaid subscription to the Capital stock of the Company.*

R. was the holder of ten shares of stock in the Franklin Land and Loan Company of the par value of $400 per share, upon which the

weekly dues paid by him, and the dividends to which he was entitled, amounted to $1715,30. He was also the holder of shares in the Chesapeake Mutual Land and Building Association, upon which he had paid $1238,70. On the 20th of July, 1874, the Franklin Company passed a resolution directing the sale of certain property belonging to the Company, and authorizing the purchaser to pay two-thirds of the purchase money in the stock of the Company. On the same day the Chesapeake Association passed a resolution to the like effect. On the 5th of August following, the two companies offered at public sale one hundred and eight pieces of property on the following terms: One-third cash, one-third in six months, and one-third in twelve months; or one-third cash, and the balance payable in stock of the Chesapeake Association or the Franklin Company at par, or at one hundred cents on the dollar of the amount paid in. At the above sale R. bought a lot of ground belonging to the Chesapeake Association for $3675, and in the payment of the purchase money he was allowed by the Association $1238,70, being the entire amount paid by him on account of his subscription to the stock of that Association, and also the sum of $1211.30 of the $1715,30, paid by him on the shares of the Franklin Company. The balance of the $1715,30. he transferred to Mrs. Solomon Rider. The property was conveyed to him by the Chesapeake Association, and thereupon the secretary of the Franklin Company, in pursuance of what he understood to be the meaning of the resolution passed by the directors in reference to the sale of the property, entered upon the Journal of the Company, "Rider stock cancelled by purchase of Chesapeake property, $1211.30." R. having paid only $1715,30, on account of his ten shares of stock in the Franklin Company, suit was brought by the duly appointed receivers of the Company, to recover of him the unpaid instalments due thereon. R. relied on the entry of cancellation of his stock by the secretary of the Company, upon the transfer of stock to Mrs. Rider, and upon the settlement with the Chesapeake Association as a defence to the action. HELD:

1st. That the entry of cancellation of the stock, made by the secretary of the Company, whether with, or without, the direction of the board of directors, could not release the defendant from liability, if any existed, for the unpaid instalments due on his stock, as it was not within the power of the secretary, or the board of directors to release the defendant from the payment of his subscription to the stock of the Company.

2nd. That the transfer of the balance of the paid up stock to Mrs. Rider, by the defendant, without her knowledge or consent, and

for the sole purpose of escaping liability on account of the unpaid instalments due on his stock, constituted no defence to the claim against him.

3rd. That the Chesapeake Association by its settlement for the property bought by the defendant, did not become the transferee of his stock in the Franklin Company, and as such liable for the unpaid instalments due by him on account of the same; such transaction in no manner affected his liability for the amount due by him.

4th. That the Chesapeake Association in allowing the defendant the credit of $1211.30, meant as to that amount to become a creditor of the Franklin Company.

The unpaid subscription to the capital stock of a corporation constitutes a trust fund to be held by the corporation for the benefit of creditors and shareholders, and directors have no power to release a subscriber to the prejudice of such creditors, or to the injury of other stockholders.

APPEAL from the Court of Common Pleas.

This suit was brought by the appellees, as receivers of the Franklin Land and Loan Company of Baltimore City, against the appellant. The declaration contained five counts, to wit: for money lent by the Company to the defendant; for money paid by the Company for the defendant, at his request; for money received by the defendant for the use of the plaintiffs; for money found to be due on accounts stated between them; and for that the defendant subscribed for and agreed to take ten shares of stock of the Franklin Land and Loan Company of Baltimore City, and to pay four hundred dollars therefor in weekly instalments, of one dollar per share, in each and every week, until the full payment therefor; and that the said defendant has failed to pay the weekly instalments of one dollar on each of said shares for more than ninety-seven weeks past, and although demanded, has not paid the same. The defendant pleaded that he never was indebted; that he never promised; limitations; that the Franklin Land and Loan Company was not a corporation, and that the plaintiffs

were not duly appointed receivers. Issues were joined. The case was tried before the Court without a jury.

*First Exception.*—At the trial the defendant offered to prove by the persons constituting the board of directors of the Franklin Land and Loan Company, that at the time the resolution of the 20th of July, 1874, for a sale of the property offered in evidence, was passed, it was the intention and understanding of the board in the passage of the resolution, that the stockholders who should elect thereunder to pay two-thirds of the purchase money for the property purchased by them, in stock of the Company, should surrender to said Company the shares of stock so used, and that as to said shares they should cease to be stockholders from the time of said surrender. The defendant also offered to prove by one of the committee appointed to superintend said sale, that it was the understanding and intention of the Franklin Company that the stockholders who should buy any of the property advertised at said sale, and elect to pay two-thirds of the purchase money in stock of said Company, would, as to said stock so used in part payment, be required at the time of so using it to surrender said stock so used, and would thereupon cease to be members of said Company. The defendant further offered to prove that with that understanding of the terms of purchase, he bought the property mentioned in the deed to him offered in evidence, and that he would not have offered for it the sum at which he purchased it, and would not have been a bidder at all, except upon the supposition that he would be authorized to pay two-thirds of the purchase money in stock of said Company, and that as to the shares of stock so used he would cease to be a stockholder in said Company.

The Court, (BROWN, J.,) on the objection of the plaintiffs, rejected said evidence, and each and every part of it, and refused to allow the defendant to prove said facts, or any of them. The defendant excepted.

Rider *vs.* Morrison, *et al.*, Receivers.

*Second Exception.*—The plaintiffs offered two, and the defendant three prayers. Their insertion is not deemed necessary to an understandiug of the principles decided. The Court granted the prayers of the plaintiffs and rejected those of the defendant. The defendant excepted.

The Court gave a verdict for the plaintiffs and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ROBINSON and IRVING, J.

*C. Dodd McFarland* and *Bernard Carter*, for the appellant.

The two exceptions present practically the same questions, namely, whether the Chesapeake Association could make the sale, which it did, to the defendant, and accept in part payment the stock of the Franklin Land and Loan Company, and whether the latter company could consent to such transfer in the manner and under the circumstances disclosed by the evidence?

The sale made by the Chesapeake Mutual Land and Building Association, to the defendant, was a valid exercise of its powers. In making the sale it was carrying out the objects of its incorporation.

The acts of the two companies were not *ultra vires.* The directors in passing the resolution, for a sale of the vacant and leasehold property, were acting within their powers. They were but making contracts—sales of their unproductive and incumbered property—to realize a fund to meet the companies' obligations. In the very act of sale they were paying debts due by the companies. To deny to the companies the power to make the sale, under the circumstances of this case, would be a denial of their power to make contracts. Without such power they could not accomplish the objects of their creation.

The doctrine of *ultra vires* applies only in those cases

where something is sought to be done or power exercised which has not been conferred. *Platt Potter on Corp.*, 547.

The sale made to the defendant, and his payment for the property purchased by him, was an executed contract, while the companies were in full operation. The companies were in possession of their property, and in the uncontrolled exercise of all their rights and franchises. There is an important difference between executed and executory contracts. If this were a proceeding on the part of the defendant against the plaintiffs to compel them to carry out an agreement for the purchase of the property sold to him, under the circumstances of this case, his position would be different. The contract of sale was completed long before the institution of this suit, the purchase money paid, the rights of the defendant to participate in the distribution of the property of the companies surrendered, a deed executed to the defendant and recorded, and the property now in the hands of innocent third parties. "Executed contracts should generally by the plainest principles of good faith be allowed to stand." *Platt Potter on Corp.*, 548.

Corporations are as much bound to good faith and fair dealing as individuals, and they will not be permitted to allow others to pay large sums of money and then turn around and disavow their acts. *Railroad Co. vs. Howard*, 7 *Wall.*, 413, and authorities cited.

Where a party comes in and claims a benefit under a sale, he will not be permitted to impeach its validity. *Loney vs. Bayly & Caldwell*, 45 *Md.*, 450.

The transfer by the defendant to the Chesapeake Association, of his stock in the Franklin Company, with the consent of both companies, was valid, and the remedy of the receivers of the Franklin, if any they have, is against the Chesapeake Association on the shares transferred to it by the defendant. The receivers succeed only to the rights of the respective companies. The companies, if they were

still in possession of their property and franchises, could not annul the sale made to the defendant; nor could the defendant set it aside. All parties to the transaction would be estopped. *Rose vs. The Mayor and City Council of Baltimore*, 51 *Md.*, 256.

The plaintiffs cannot found their right to recover on the ground of the personal liability of the defendant as a stockholder in the Franklin Land and Loan Company. The order appointing them receivers does not take from and extinguish the legal right of the creditor to prosecute his claim against the stockholder, and vest it, either additionally, *virtute officii*, or exclusively, in the receivers. It is a liability existing independent of the corporation. Receivers of the corporation acquire title to the corporate property; its effects; the liabilities to it. The creditor, on filing his bill in his own behalf and for other creditors, praying the appointment of receivers, on such appointment being made, surrenders his further right to sue the corporation, and must await, and be satisfied with the money the receivers can give him. They are not receivers of the legal or equitable rights of the creditors against the stockholder. Their liability to the creditor is a personal liability; it is not a corporate liability. It is a remedy he may invoke or abandon. The receivers cannot invoke it for him. If the corporation should make an assignment for the benefit of its creditors, the assignee would take only the corporate effects and liabilities to it, not previously conveyed away. An assignee of the effects of a corporation would only take the property that an assignee at common law would take under an assignment.

The Chesapeake Mutual Land and Building Association had the power to invest its capital funds in the stock of the Franklin Land and Loan Company. It was not restrained from doing so, either by its charter or the general law. It has been so decided in cases of insurance companies. *Angell & Ames on Corp.*, 158.

All corporations have the power to take the stock of other corporations, as incidental to the power of collecting a debt or making a sale. A bank or manufacturing corporation may buy its own stock. *Angell & Ames on Corp.*, 159 ; *Williams vs. Savage Manufacturing Co.*, 3 *Md. Ch. Dec.*, 418.

Both companies had provided in their by-laws for fines and forfeitures. Parties subscribed and creditors trusted in the face of this law, and the by-law made in pursuance thereof. The defendant only incurred the liability, when he subscribed for shares of stock, of being fined or having his shares forfeited if he failed to pay his weekly dues. He did not incur the liability of a suit for unpaid instalments.

Authority for the passage of the resolutions for the sale of the vacant ground and leasehold property, and the receipt of stock of the members, may be found in section 94 of Article 40, of the Revised Code, page 331. It provides " that it shall and may be lawful for any of the corporations mentioned in this section, at any time, either before or after the shares of its stock shall have been fully paid up, to redeem or purchase the same at a sum or price, as such member may agree to receive therefor ; " "and all shares of stock so redeemed, advanced or loaned or *purchased* by such corporation, shall be considered as redeemed shares, and shall be *cancelled.*"

The resolutions of the companies for the sale of certain property, was but a provision for the purchase of the stock of its members.

The Board of Directors of a banking corporation, having authorized the stockholders by a resolution to pay their debts to it by a transfer of their stock to it, several of the stockholders availed themselves of the authority of the resolution, and discharged their debts to the Bank in this way. It was decided that they, the directors, had authority to pass the resolution, and that the stockholders

were legally authorized thus to pay their debts to the Bank, and that equity would not compel them to resume their stock and pay their debts in a different way, although the Bank had stopped payment. *Angell & Ames on Corp.*, 280; *Taylor vs. Miami Exporting Co.*, 6 *Ohio*, 218; *City Bank of Columbus vs. Bruce*, 17 *N. Y.*, 507; *Weston's Case, Law Rep.*, 4 *Ch. App.*, 20; *Master's Case, Law Rep.*, 7 *Ch. App.*, 292; *Harrison's Case, Law Rep.*, 6 *Ch. App.*, 286; *Grisewood and Smith's Case*, 4 *De Gex & J.*, 544; *New Albany vs. Burke*, 11 *Wall.*, 96; *Gelpcke vs. Blake*, 19 *Iowa*, 263, 267; *Cooper vs. Frederick*, 7 *Alabama*, 738; *Taylor vs. M. Ex. Co.*, 7 *Ohio*, 162.

The by-laws provide that any member may withdraw his shares and so cease to be a member. Upon such withdrawal he becomes no longer a member, but a creditor. *Gaehle's Piano Man. Co. vs. Berg*, 45 *Md.*, 113.

Parties who become creditors while such a power exists in the charter have no ground to complain of its exercise. *Penn. College Cases*, 13 *Wall.*, 190, 218; *West Wis. R. R. vs. Supervisors*, 35 *Wis.*, 257, 271; *Piek vs. C. & N. W. R. R. Co.*, 6 *Bissell*, 177, 181.

The transaction therefore, by which the appellant surrendered his shares accomplished no more against the corporation or its creditors than would have been at any moment within the power of the appellant, under the withdrawal clause. As the appellant had therefore the right at any time to withdraw, his obligation to continue to pay was not one on which the creditors had any right to rely. The transaction by which the stock was surrendered, was perfectly valid.

The cancellation of the stock was a valid transaction, but if it is invalid, the only remedy that the receivers have, is to file a bill to have the *whole transaction* set aside; and they cannot recover in this case while retaining all the benefits of the transaction as consummated on the 15th of August, 1874—the settlement between the Chesapeake

Association and the defendant. This transaction must either be set aside as a whole, or stand as a whole. *London H. & C. Exchange Bank vs. Henry, Law Rep.*, 7 *Eq. Cases*, 334; *Saunders' Case*, 2 *De Gex, Jones & Smith*, 101; 2 *Parsons on Con.*, 679, 680, (3 *vol. Ed.*;) *Emerson vs. Mc-Namara*, 41 *Maine*, 565.

*Samuel Snowden* and *Robert D. Morrison*, for the appellees.

The unpaid subscriptions to the capital stock constituted a trust fund in the hands of the stockholders, for the benefit of the creditors of the corporation, and no arrangement can be made by the directors, to the prejudice of creditors, to release a subscriber from his engagement when once perfected. *Hughes vs. Antietam Man. Co.*, 34 *Md.*, 316; *Osgood & Moss vs. King*, 42 *Iowa*, 478; *Zirkel vs. Joliet Opera Co.*, 79 *Ill.*, 334; *Re Bachman*, 12 *Bankr. R.*, 223; *Putnam vs. New Albany*, 4 *Biss.*, 365; *Curry vs. Woodward*, 53 *Ala.*, 371; *Marsh vs. Burroughs*, 10 *Am. Law Reg.*, (*N. S.*,) 718; *Sawyer vs. Hoag*, 17 *Wall.*, 610; *Upton vs. Tribilcock*, 91 *U. S.*, (1 *Otto*,) 45.

And no transfer thereof can be made by which, as to the creditors of the corporation, a stockholder can relieve himself from liability for his subscription to stock, and substitute that of another person. *Re Bachman*, 12 *Bankr. R.*, 223.

A purchase by the corporation, of the shares of the stockholder, will not release him from liability for the unpaid instalments. *Currier vs. Lebanon Slate Co.*, 56 *N. H.*, 262.

And each stockholder having a vested right in the contract of every other stockholder, it is beyond the power of a Court of equity to invest any person with a discretionary right to release that contract. *Chancellor vs. Bevan*, 77 *Ill.*, 40:

The appellant became a holder of ten shares of the stock of the corporation by transfer to him from Mackenzie,

which imposed upon him the obligation to pay the instalments unpaid on account of said shares. *Hall vs. U. S. Ins. Co.*, 5 *Gill*, 484 ; *Webster vs. Upton*, 91 *U. S.*, 69.

He continued to pay these instalments until after the corporation had became involved, and its obligations, amounting to over $28,000, had matured and were unpaid when he purchased at public sale a piece of property for $3675. The terms of sale entitled him to withdraw the amount he had paid in on account of the stock held by him, which was $1211.30, but nothing was said about the unpaid instalments on the capital stock. These so far as it appears from the resolution of the directors and the terms of sale, are still to be paid by him, and as the proceedings of the directors, and the terms of sale were in writing, they could not be changed by parol testimony contained in the offer showing the understanding of the directors and the appellant.

The appellant was therefore bound to pay the unpaid instalments for the stock, notwithstanding his purchase ; for even if the directors could have released him, the terms of sale show that such was not their intention. But even if they had so intended they could not do so, as the rights of creditors intervened; and neither the corporation as represented by the stockholders nor by the directors could in any way or manner, much less by a parol agreement, or the entry of cancelled on the journal, release debts due to the corporation by any of the stockholders for unpaid subscriptions, for each stockholder, as to such subscription, was a trustee, as to such unpaid instalments for the benefit of the creditors of the corporation, and no power existed in the corporation to release the debts due to the *cestuis que trust.* The corporation was at the time of the sale insolvent, and the creditors had therefore acquired rights which are now represented by the appellees, of which they could not be deprived by any act of their debtor—although at the time when the

sale was made the creditors had made no attempt to assert their rights to the property of the corporation; yet at the time of the completion of the transaction, 15th August, 1874, an application was pending for an injunction and receiver, and the knowledge of this made parties anxious to get their deeds. Clearly therefore the transaction was wholly void under the Act of incorporation. 1868, *ch.* 471, *sec.* 191.

Nor could the transfer of the balance paid in on ten shares to Mrs. Solomon Rider, "*in order to get rid of any liability,*" according to his own statement, release the appellant; and being to a person incapable of responding in respect of such liability is void as to the creditors of the corporation. *Thompson on Liability of Stockholders, sec.* 215, *note* 2, *page* 269.

Since the appellant was not released from his unpaid subscription, either by the purchase of the property or the transfer of his shares, the company being insolvent at the time of the transaction, the Court was right in granting the plaintiffs' prayers, and rejecting those of the defendant.

Interest was allowed by the Court in this case though refused by the jury in *Musgrave's Case.* And in order to settle the controversies it has been agreed to argue the question before this Court whether the plaintiffs are entitled to recover interest *as matter of law,* or whether the same *rests in the discretion* of the jury or Court, as the case may be. It is submitted on the part of the appellees that they are entitled to interest as matter of law.

The appellant knew the amount of the instalments to be paid as they became due, and when and where the payments were to be made, and having omitted to make such payments he is now bound to pay interest thereon. *The People vs. New York,* 5 *Cowen,* 331, 334; 4 *Wait's Actions and Defences,* 127.

These authorities fully establish the right of the appellees to recover the interest as matter of law, and not in

the discretion of the jury. The prayer in *Scarlett vs. Academy of Music*, 43 *Md.*, 203, made it obligatory on the jury to give interest upon the instalments, and though a great many points were made by the counsel for the appellant in that case, no objection was made to the allowance of interest.

It has been objected to the recovery of the appellees in this case, that the capital stock could not be paid up within the time required by law. 1868, *ch.* 471, *sec.* 59; 1872, *chap.* 325.

The appellees represent the creditors of the corporation; and it is no answer to a suit for the unpaid instalments of the stock, that the defendant, a stockholder, has, by his own agreement to pay the stock in four hundred weeks, relieved himself from liability because his contract extended beyond the time required by law. In *Dorsey's Case*, 48 *Md.*, 40, the stockholder was held estopped from objecting to the by-laws, by reason of the non-adoption of them by the corporation according to law; and also from objecting that the capital stock had not been all subscribed for, because he had acted under the by-laws and had received the benefits of the corporation; certainly then he is estopped from setting up the defence.

Robinson, J., delivered the opinion of the Court.

The appellant was the holder of ten shares of stock in the Franklin Land and Loan Company of the par value of $400 per share, upon which the weekly dues paid by him, and the dividends to which he was entitled, amounted to $1715.30.

He was also the holder of shares in the Chesapeake Mutual Land and Building Association, upon which he had paid $1238.70.

On the 20th of July, 1874, the Franklin Company passed a resolution directing the sale of certain property belonging to the Company, and authorizing the purchaser

to pay two-thirds of the purchase-money in the stock of the Company.

On the same day the Chesapeake Association passed a resolution to the like effect.

On the 5th of August following, the two companies offered at public sale one hundred and eight pieces of property on the following terms: One-third cash, one-third in six months and one-third in twelve months, or one-third cash, and the balance payable in stock of the Chesapeake Mutual Land and Building Association, or the Franklin Land and Loan Company at par, or at one hundred cents on the dollar of the amount paid in.

If these terms are to be construed as meaning that the purchaser had the option of paying two-thirds of the purchase money in the stock of either or both companies, it is plain that such terms were not authorized by the resolutions of the 20th of July.

By these resolutions the purchaser had the option of paying two-thirds of the purchase money of property belonging to the Franklin Company in the stock of that Company, but not the option of paying in the stock of the Chesapeake Association—And so with the payment of purchase money for property belonging to the Chesapeake Association.

At the above sale the appellant bought a lot of ground belonging to the Chesapeake Association for $3675, and, in the payment of the purchase money, he was allowed by the company $1238.70, being the entire amount paid by him on account of his subscription to the stock of that company, and also the sum of $1211.30 of the $1715.30 paid by him on the shares of the Franklin Company. The balance of the $1715.30 he transferred to the wife of Solomon Rider.

The property was conveyed to him by the Chesapeake Association, and thereupon the following entry was made by the secretary of the Franklin Company on the books of said Company:

"Moses Rider, Dr.

　　　"To the Chesapeake M. Land & Building Asso.

"Rider stock, cancelled by purchase of Chesapeake property.... ...................... ........ .... ...............$1211.30."

This entry was made by the secretary in pursuance of what he understood to be the meaning of the resolution passed by the directors in reference to the sale of the property.

The appellant having thus paid but $1715.30 on account of his ten shares of stock in the Franklin Company, this suit is brought by the appellees, duly appointed receivers of said Company, to recover the unpaid instalments due thereon, and the appellant relies on the entry of cancellation of his stock by the secretary of the Company, and upon the transfer to Mrs. Rider, and the settlement with the Chesapeake Association as a defence to the action.

In respect of the cancellation of the stock by the secretary, it is clear that no such action by him could in any manner release the appellant from liability, if any existed, for the unpaid instalments due on his stock. And this too, whether such entry was made by the secretary with or without the direction of the board of directors. It was not within the power of the secretary or the board of directors to release the appellant from the payment of his subscription to the stock of the company.

The unpaid subscription to the capital stock of a corporation constitutes a trust fund to be held by the corporation for the benefit of creditors and shareholders, and directors have no power to release a subscriber to the prejudice of such creditors or to the injury of other stockholders. In *Burke vs. Smith*, 16 *Wallace*, 395, the Supreme Court say:

"It has been settled by very numerous decisions, that the directors of a company are incompetent to release an original subscriber to its capital stock, or to make any

arrangement with him by which the company, its creditors, or the State shall lose any of the benefit of his subscription."

And in the case of the *Bedford Railroad Company vs. Bowser*, 48 *Penna.*, 37, the Court say:

"It is an abuse of their trust, wholly unauthorized, and at war with the design of the charter, to single out some of the stock subscribers and release them from their liability. No such authority in them has ever been recognized." *Alford vs. Miller*, 32 *Conn.*, 543; *Jones vs. Terre Haute & Richmond R. R. Co.*, 57 *N. Y.*, 196.

Something was said in the argument about the transfer of the balance of the paid up stock to Mrs. Soloman Rider, and as to the power of a subscriber to transfer his stock and thus escape all further liability on account of the same. Whatever may be the English doctrine on this subject, it is well settled in this country that the transfer of shares of stock in a failing corporation, to a man of straw, and made for the purpose of escaping liability as a shareholder, is void as to the creditors and other stockholders of the company. *Nathan vs. Whitlock*, 3 *Edwards' Ch. Rep.*, (215,) and affirmed on appeal, 9 *Paige*, 152; *Provident Saving Inst. vs. Jackson Place Skating Rink*, 52 *Mass.*, 557; *Marcy vs. Clark*, 17 *Mass.*, 330.

And for the reason that in this country the capital stock, embracing both paid and unpaid subscriptions, is a trust fund for the benefit of creditors and shareholders, and it would be inconsistent with the nature of such a trust to permit subscribers to transfer their stock to insolvent persons, and thus escape liability for the payment of their subscription.

The appellant admits that he made the transfer to Mrs. Rider without her knowledge or consent, and for the sole purpose of escaping liability on account of the unpaid instalments due on his stock, and we are of opinion, for the reasons above stated, that such transfer constitutes no defence to this action.

Rider *vs.* Morrison, *et al.*, Receivers.

We come now to the settlement of the Chesapeake prop-
erty bought by the appellant. At this time there stood
to his credit on the books of the Franklin Company,
$1715.30, which sum represented the amount paid by him
as dues, together with his proportion of dividends earned
by the Company. Of this sum he was allowed by the
Chesapeake Association in part payment of the property,
$1211.30, and the balance due to him of $504 he trans-
ferred to Mrs. Solomon Rider. And it is argued that by
this settlement, the Chesapeake Association became the
transferree of the appellant's stock in the Franklin Com-
pany, and as such liable for the unpaid instalments due
by him on account of the same.

This contention is not, we think, supported either by
the terms of sale or by the resolution of the Company,
passed on the 20th of July, authorizing the sale to be
made. By this resolution the purchaser of property be-
longing to the Chesapeake Association was allowed the
option of paying two-thirds of the purchase money in the
stock of that company. It did not authorize the purchaser
to pay in the stock of the Franklin or any other company.
If the terms of sale are to be construed as conferring this
option, it is very clear that under them the purchaser was
to be allowed only on account of the stock paid in by him.
In other words if he paid the entire amount due on ac-
count of his stock, such stock was to be taken in part pay-
ment of the purchase money at par, or if he had paid but
part he was to be allowed one hundred cents on the dollar
of the amount paid in.

The fact is, these two companies occupied the same build-
ing, were managed pretty much by the same persons, and
the properties belonging to them were sold on the same
day, at the same place, and by the same officers, and in
allowing the appellant the credit of $1211.30, the Chesa-
peake Association meant as to that amount to become a
creditor of the Franklin Company. We cannot suppose

for a moment that it intended to allow him not only dollar for dollar on the amount paid by him on his stock in the Franklin Company, but also to become liable in his stead for the unpaid instalments due by him on account of the same.

Whether the Chesapeake Association had the power under its charter and by-laws to sell its property and to allow the purchaser the option of paying two-thirds of the purchase money in the stock of another company, is a question not involved in this appeal.

This is a suit by the receivers of the Franklin Company against the appellant to enforce the payment of a balance due by him on his subscription to the stock of the Company, and his liability for the amount due by him is in no manner affected either by the cancellation of his stock by the secretary of the Company or by the settlement made between him and the Chesapeake Association for property purchased of that company.

It follows from what we have said, that the evidence offered under the first exception was inadmissible. It was not within the power of the directors of the Franklin Company by resolution or otherwise, to release the appellant from liability on account of his subscription to the stock of the Company. If this be so, the fact that the Chesapeake property was bought by the appellant with the understanding that he was to have the option of paying two-thirds of the purchase money in the stock of the Franklin Company, and that by such payment his stock was to be cancelled, were matters not pertinent to the issues before the jury. Whether the Company had the right to sell its property on such terms, and what are the rights and liabilities of the appellant as purchaser, are questions not involved in this appeal.

The record shows that the appellant was the holder of ten shares of stock in the Franklin Company of the par value of $400 per share, upon which he had paid but

$1715.30, and the sole question is whether he is liable in a suit brought by the receivers of said Company representing its creditors and shareholders, for the balance due on said stock? There is nothing to show either a valid transfer of said stock, or a release of liability for the unpaid instalments due on the same, and we are of opinion that there was no error in granting the prayers offered by the plaintiffs, and in rejecting those offered by the defendant.

*Judgment affirmed.*

(Decided 2nd July, 1880.)