# CHICAGO BUILDING AND MANUFACTURING COMPANY v. SUMMEROUR.

1. Where two contracting parties deal with each other on equal terms, and there is no such confidential relation between them as would justify a special confidence or trust reposed by one in the other, a written agreement entered into between them can not be set aside upon the ground that the party seeking to be relieved was induced to enter into and sign such agreement in consequence of fraudulent misrepresentations upon the part of the adverse party ( these misrepresentations not, however, relating to the contents of the agreement ), when it appears that the party signing did so after full opportunity to inform himself as to the terms of the instrument, but negligently omitted to take such precautions as would reasonably have served to protect him against the imposition alleged to have been practiced.

2. A plea by one subscriber for stock in a joint enterprise, where there were a number of subscriptions for a common object, that one of such subscribers had been released from liability on his subscription, is bad, unless it avers that such release was made by the person lawfully holding the contract of subscription in settlement for the work accomplished.

Argued June 24, — Decided July 20, 1897.

Certiorari. Before Judge Gober. Milton superior court. August term, 1896.

*H. L. Patterson* and *Glenn & Rountree*, for plaintiff.
*B. F. Simpson* and *T. L. Lewis*, for defendant.

LITTLE, J. Summerour, together with fifty-seven other individuals, in furtherance of a desire to form a stock company for the manufacture of butter and cheese, entered into a contract with the Chicago Building and Manufacturing Company, through its agent, whereby said company undertook to erect for them a butter and cheese factory at a cost of $5,250.00 ; said contract contained a subscription by Summerour, and the other individuals, to the stock of the company for amounts ranging from $100.00 to $300.00 each, with the further stipulation that all subscriptions under said contract should belong to said company until the contract price of the factory had been fully paid, the remainder of the subscription, after such payment, to belong to said subscribers, who it was stipulated should become incorporated, and should be used as working capital. It appears that the company completed the factory, and in process of collecting the amount due under the contract,

entered suit against defendant Summerour for the amount of his subscription, viz., $100.00. The justice before whom the cause was tried rendered judgment for the plaintiff; an appeal was then taken to a jury in the justice's court, which resulted in a verdict for the defendant; whereupon the plaintiff carried the case by certiorari to the superior court, by which the judgment in favor of the defendant was affirmed. To the overruling of the certiorari the plaintiff excepted, and sued out a writ of error to this court. The questions which we are now to consider arise upon certain pleas filed by the defendant, the substance of which is set out, in the order in which the facts alleged in such pleas are involved, in the headnotes preceding this opinion.

1. The defendant pleaded that the plaintiff, by its agent Bowman, who circulated the subscription, offered that if he would sign for one share, plaintiff would employ him to work for it on a salary of fifty dollars per month and all expenses, and would start him to work in a very short while after he subscribed, but that plaintiff had never offered him an opportunity to go to work, and he (defendant) thought that the contract was verbal, and did not know of the printed stipulations on the opposite page of said contract, and did not sign said list with any knowledge or reference to said printed matter, and that his attention was not called to the same, but that said printed part of the contract was fraudulently kept concealed from him, and that he only saw the blank leaf that he signed; further, that the plaintiff represented to him that the factory would be a good thing and would be a paying investment, when in truth and in fact it is worthless as an investment. The defendant contends that these facts constitute such fraud on the part of the plaintiff as vitiates his contract of subscription. While it is a sound principle of law that a fraud perpetrated in procuring the execution of a contract voids the same as to the party upon whom such fraud is practiced, and is so declared by our code (Civil Code, § 3669), the burden of showing such fraud is with the party complaining. In the present case the defendant subscribed to a contract which contained, among other things, the stipulation that the

plaintiff company "will not be responsible for any pledges, promises or interpretations made by its agents or representatives, that do not appear in this contract and made a part thereof either in print or writing." Upon the trial the defendant himself testified: "At the time I signed the paper, I had it in my own hands folded as above stated. There was nothing to keep me from reading it, if I had wished to do so, or had thought it necessary. I thought Bowman would do what he promised, or I would not have had anything to have done with him." There appears to have been no representation, fraudulent or otherwise, by the plaintiff's agent, as to the contents of the contract entered into by the defendant; there is no evidence of any confidential relations existing between the parties which would justify a special confidence or trust reposed by the defendant in the plaintiff or its agent; the contracting parties were dealing with each other on equal terms; and if the defendant was deceived or misled as to the terms and conditions of the contract into which he entered, it was the result of his own negligence and indifference. If he signed the written agreement without reading it, and it did not contain the contract as in fact made, or if he was induced to enter into the agreement by fraudulent promises on the part of the agent, he was only deceived by such promises in consequence of his own neglect to read the terms of the written contract to which he subscribed. The defendant had full opportunity to inform himself as to the terms of the instrument. Had he taken the precaution to do so, he would have been protected against the imposition alleged to have been practiced upon him. His negligent omission to inform himself as to the truth of the representations or their binding force defeats an impeachment of his contract upon grounds as to which the exercise of reasonable care would, in the first instance, have protected him. *Wood* v. *Cincinnati Safe & Lock Co., 96 Ga.* 120; *Bostwick* v. *Duncan, Johnston & Co., 60 Ga.* 383.

2. As a further defense to the action, defendant pleaded, that at the time he signed, plaintiff represented that A. S. Hamilton, R. O. Medlock and F. H. Medlock had each subscribed $200.00 to said factory, and afterwards the plaintiff,

without the defendant's consent or knowledge, released each of them from the payment of $100, on the ground that their subscription was nominal and intended from the beginning only to induce others to embark in said enterprise. In support of this plea, the defendant introduced evidence of an oral understanding that at the time the parties named in the plea subscribed $200.00, they were to be liable for only $100.00 each. This testimony, however, was ruled out. The defendant then introduced evidence to the effect that the subscribers named had been released by the plaintiff's agent, and also by the stockholders. On the other hand, the plaintiff introduced testimony to the effect that the parties named had paid for one share each; that they had asked to be released from the other shares respectively, but had been receipted for what they paid and release for balance refused, and that said parties were still held on the books of the company as delinquent debtors. It nowhere appears from the evidence that the party making the alleged release was an agent of the plaintiff. No facts or circumstances were proved from which an agency could be inferred. There was no evidence tending to show either that the party making the alleged release, was a general agent of the plaintiff company, or, if a special agent, that he was authorized to bind the plaintiff to a contract of release. The unpaid subscription to the capital stock of a corporation constitutes a trust fund to be held by the corporation for the benefit of creditors and shareholders. 48 Pa. 37; 32 Conn. 543; 57 N. Y. 196; 54 Md. 443; 16 Wall. 395. A subscription contract, like any other contract, may be waived, canceled or dissolved by the mutual consent of all the parties interested. The interested parties are the subscriber himself, the other stockholders and the corporate creditors existing at the time of the cancellation. 1 Cook on Stock and Stockholders (3d ed.), § 168, and authorities there cited. The defendant, therefore, having failed to prove the assent of the plaintiff company to the alleged release of the parties named in his plea, can take nothing by his plea of release.

*Judgment reversed. All the Justices concurring.*