## 60308. BOATMAN et al. v. CITIZENS & SOUTHERN NATIONAL BANK.
## 60309. BOATMAN et al. v. SNAVELY.

The Citizens & Southern Bank sued the appellants and two other co-signers (Cody and Enterkin) on a $100,000 note secured by deed to secure debt to certain real estate. Appellants filed defenses, cross actions and counterclaims and third-party claims, joining Snavely, an officer of the bank, and alleging that the bank, Snavely, and co-signers Cody and Enterkin had engaged in a conspiracy to defraud them by misrepresenting the value of the land, making false statements regarding the necessity for repayment, etc. The appellees filed motions for summary judgment which were granted by the trial court and these appeals followed.

ARGUED JULY 8, 1980 — DECIDED SEPTEMBER 8, 1980 — REHEARING DENIED SEPTEMBER 25, 1980 —

*Warren W. Wills, Jr., Robert U. Wright,* for appellants.

*Peter M. Degnan, Harold A. Lane, Emory A. Schwall, T. Penn McWhorter, Oscar M. Persons,* for appellee (Case No. 60308).

*Peter M. Degnan, Harold A. Lane, Emory A. Schwall, T. Penn McWhorter, John E. Stell, Jr.,* for appellee (Case No. 60309).

DEEN, Chief Judge.

1. The record unequivocally shows that one Brawner was the owner of the acreage in question in early 1974 and that he had at least considered selling an interest in it to Enterkin and Cody; that he borrowed $100,000 from the defendant bank on the security of the property and Enterkin and Cody co-signed the note and deed to secure debt, although no warranty deed to them was made out at that time. Brawner, Enterkin, and Cody had previously engaged in loose partnerhip arrangements for the speculative purchase and sale of land, and some of these transactions had been financed by the bank. An interoffice memo between the bank and an attorney indicates that the bank had searched the record on this property, and the attorney reported that a loan deed between the bank on the one hand and Enterkin, Cody and Brawner on the other was not substantiated by any warranty deed from Brawner to Enterkin and Cody. Brawner's deposition sheds little light on this or any other relations he may have had with the co-signers; apparently he was engaged in a number of land sales and the business was conducted in a fairly informal manner. The only reasonable conclusion from this set of evidence is that Brawner, Enterkin and Cody may at one time have intended (as Brawner testified their custom was) to divide the interest in the land and the profits on its sale, but instead they purchased at the same time and along with the appellants. There is no slightest scintilla of evidence that either the bank or its officer Snavely conspired to defraud the appellants, or in fact that they had any relationship to the land except that they loaned money to finance it. The claim is based on the facts that Brawner's original purchase price was about $56,000, that he sold the land to the four purchasers for a stated price of $100,000, and that at this time the bank lent $100,000 by paying over $88,000 and putting the remaining $12,000 in a certificate of deposit which was cashed in a few days later. However, the bank had the property appraised and that figure stood at $126,000, so any argument based on the fact that the bank knowingly misrepresented the value of the land to the purchasers by lending more than its value must fail. In any event, there is not the slightest indication that the bank interested itself in Boatman and McIntosh as purchasers for the purpose of obtaining more security for its loan, which is the contention here. No illegal or reprehensible act on the part of the

lender appears.

2. As to Snavely, the bank's officer and agent, the contention that appellants were induced to purchase this property on Snavely's assurances that a buyer had already been located for the property and no payments would be expected from the appellants until sale of the property must also fail. It should be noted here that Boatman, McIntosh, Enterkin and Cody had been engaged with each other and with other land speculators in a series of land deals, and that none of them was financially naive in this area. The closing occurred on June 3, 1974, between Brawner and the four purchasers for a stated price of $118,526.81, most of it in the form of a loan secured by the bank for $101,749.64. The appellants do not contend that either the bank or Snavely had anything to do with this closing or with the negotiations that led up to it. The bank loan was the assumption of a first loan deed from Brawner to the bank as stated in the warranty deed executed by Brawner to the appellants. The deed to secure debt recited on its face that it secured a demand note; thus, the appellants cannot reasonably contend either that the bank misled them as to the terms of the note, its amount, or the value of the property. The original 90-day note for $100,000 was re-executed on August 9, 1974 and November 7, 1974. The appellants contend by affidavit that in connection with their execution of the August 9 note they were induced by Snavely who told them he "knew it was presently worth in excess of $116,000, that there was a purchaser he knew of who would buy the property for a profit, that the August, 1974, note was simply an interim note and that a new note would be made for the purchaser to which he referred and we would have to make no payments under the note."

There is no confidential relationship between a bank and a customer borrowing funds, from which it follows that an oral agreement not to enforce a promissory note, which is a contract in writing, is not a type of fraud constituting an exception to the parol evidence rule. *First Nat. Bank &c. Co. v. Thompson,* 240 Ga. 494 (241 SE2d 253) (1978). To the same effect, statements as to future acts merely promissory in their nature are not actionable. *Patterson v. Professional Resources,* 242 Ga. 459 (5) (249 SE2d 248) (1978). Specifically, an oral promise not to perform an act which under the terms of a commercial instrument may be performed is unenforceable, absent a fiduciary relationship. *Craft v. Drake,* 244 Ga. 406, 408 (260 SE2d 475) (1979). No fiduciary relationship existed between the bank and the appellants so far as the ascertainment of title to or value of the property is concerned. *C. & S. Nat. Bank v. Arnold,* 240 Ga. 200 (240 SE2d 3) (1977). If in fact any actionable fraud was perpetrated on the appellants by the co-purchasers of the

land, as alleged, there is a complete failure of proof that the appellees were involved therein. In fact at the time of the June 3 closing McIntosh, asked if they were told that there was *a firm commitment* as to a prospective buyer, replied in the negative. Thus no jury issue appears as between the appellants and the bank or its officers. The trial court properly granted these defendants' motions for summary judgment.

*Judgments affirmed. Birdsong and Sognier, JJ., concur.*