66848. CITIZENS BANK, VIENNA v. BOWEN et al.

SOGNIER, Judge.

Citizens Bank, Vienna, Georgia (the Bank) sued Lamar Bowen, Jr. and his father, D. L. Bowen, on four promissory notes executed by Lamar and guaranteed by D. L. Bowen. The Bowens had obtained the Bank's permission to voluntarily liquidate farm equipment that secured the various notes each had executed in favor of the Bank. The sales proceeds from D. L. Bowen's collateral were sufficient to pay his notes, but Lamar Bowen's equipment did not sell for an amount sufficient to satisfy his notes. The Bank brought the instant action to recover the deficiency. D. L. Bowen defended on the ground that his signature on the guaranties held by the Bank was obtained by fraud. The trial court directed a verdict in favor of the Bank against Lamar Bowen for the amount of the deficiency. The jury returned a verdict in favor of D. L. Bowen and the Bank appeals.

1. Appellant contends that the trial court erred by admitting into evidence testimony of oral statements between the parties made prior to or contemporaneously with the signing of the guaranties of payment, which statements attempted to vary the terms of the written documents. Appellees contend that the purpose of the statements was not to contradict the terms of the written agreements but to show that the agreements were void because D. L. Bowen's signature on the guaranties was obtained by fraud. *Hinson v. Hinson,* 221 Ga. 291, 294 (2) (144 SE2d 381) (1965); *Johnson v. Sherrer,* 197 Ga. 392, 403 (8) (29 SE2d 581) (1944). Appellant argues, however, that appellees are precluded from their defense of fraud by the "read or perish" rule that "[o]ne having the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the instrument. [Cits.]" *Craft v. Drake,* 244 Ga. 406, 408 (260 SE2d 475) (1979). Appellees argue that D. L. Bowen's admitted failure to read the guaranty instruments was excused by certain exceptions to the "read or perish" rule.

The Bank had permitted Lamar and D. L. Bowen to finance equipment purchases by using jointly owned farm equipment as collateral. This practice was criticized by FDIC bank examiners and the Bank asked the Bowens to come in in order to obtain cross-endorsements on their respective notes. The Bank also wanted D. L. Bowen to endorse Lamar Bowen's loans because Lamar's collateral was insufficient. The need for cross signatures was initially explained to the Bowens by a Bank employee, Middlebrooks, but they refused his request to sign the guaranties and asked to see Wiley, whom they knew. Wiley explained that the cross-signing was needed

because the Bank was having problems with the FDIC. The Bowens then signed the guaranties.

D. L. Bowen testified at trial that "[f]or some reason or other," he did not see the heading, "Guaranty of Payment," on the documents he signed, surmising that the heading had been covered by an attachment dealing with credit life insurance, or that the papers had been doubled over. "[Wiley] was handing them to me and he was in a hurry and all that and I didn't see the [heading] there, I didn't know — thought I was signing an agreement giving him the right to dispose of the equipment in case something happened [to me]. I didn't know I was signing [a] guaranty. . . . [H]e got me tricked into signing and I signed because I trusted him. . . . I wouldn't sign with Mr. Middlebrooks, but I would for Mr. Wiley."

"Where one who can read signs a contract without apprising himself of its contents, otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it . . . unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it. [Cits.]" *Morrison v. Roberts,* 195 Ga. 45 (1) (23 SE2d 164) (1942). "Fraud which would relieve a party who can read must be fraud which prevents him from reading. [Cits.]" *Ansley v. Forest Services,* 135 Ga. App. 745, 748 (218 SE2d 914) (1975).

We have searched the record and found no evidence showing that D. L. Bowen was prevented from reading the documents he signed. While Bowen testified that the documents were covered up so that he could not see the words, "Guaranty of Payment," he testified repeatedly and consistently that he could have read the documents if he had so requested. Further, he stated that he could have moved any attachments covering up the documents in order to read what was beneath them, but did not do so. Even if Wiley was in a hurry to have the documents signed, there is nothing to show that this presented such an emergency as to prevent Bowen from reading the papers he signed. See *Lewis v. Foy,* 189 Ga. 596, 599 (6 SE2d 788) (1940); *Morgan v. Denton,* 28 Ga. App. 88 (110 SE 328) (1921). Nor did Bowen's desire not to cause "too much trouble" by taking the time to read the document excuse his failure to do so. *Stoddard Mfg. Co. v. Adams,* 122 Ga. 802, 803 (50 SE 915) (1905).

While fraud and reasonable diligence are normally questions for the jury, *Maxey-Bosshardt Lumber Co. v. Maxwell,* 127 Ga. App. 429,

431 (193 SE2d 885) (1972), absent any evidence showing D. L. Bowen was prevented from reading the contract by emergency, artifice or trick of appellant, we must hold as a matter of law that there was no fraud. See *B. E. Robuck, Inc. v. Walker,* 212 Ga. 621 (94 SE2d 696) (1956); *Lewis v. Foy,* supra; *Chicago Bldg. &c. Co. v. Summerour,* 101 Ga. 820, 821 (1) (29 SE 291) (1897); *Robi v. Goldstein,* 100 Ga. App. 606 (112 SE2d 165) (1959); *Williamson v. Read Phosphate Co.,* 40 Ga. App. 219, 221 (2) (149 SE 175) (1929); *Ward v. Colt Co.,* 28 Ga. App. 24 (2) (109 SE 921) (1921).

Further, there was insufficient evidence to authorize the jury to find that D. L. Bowen and Wiley shared a confidential relationship which would excuse Bowen's failure to read what he signed on the basis of Wiley's representations. That Bowen reposed trust and confidence in Wiley does not create a confidential relationship. *Dover v. Burns,* 186 Ga. 19, 26 (196 SE 785) (1938). "In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." Id. The contracts between D. L. Bowen and Wiley prior to the day the guaranties were signed were limited: Wiley had spoken once at the Bowens' church, had known the Bowens for a number of years, and had done business with them on several occasions while Wiley was employed at a tractor company. These facts "do not evidence a relationship where one party is in a position to 'exercise a controlling influence over the will, conduct, and interest of another.' " *Davis v. Carpenter,* 247 Ga. 156, 157 (274 SE2d 567) (1981). See *C. & S. Nat. Bank v. Arnold,* 240 Ga. 200, 201 (240 SE2d 3) (1977); *Boatman v. Citizens &c. Nat. Bank,* 155 Ga. App. 848, 850 (273 SE2d 190) (1980); *Limoli v. First Ga. Bank,* 147 Ga. App. 755, 757-758 (250 SE2d 155) (1978).

Absent a confidential relationship or such fraud as prevented D. L. Bowen from reading the guaranty instruments he signed, appellees may not rely or act upon any misrepresentations as to the contents of those instruments. *Robi,* supra; *Bateman v. Small,* 24 Ga. App. 244, 246-247 (100 SE 573) (1919). The trial court erred in admitting parol evidence of contemporaneous statements of the parties. OCGA § 24-6-1 (Code Ann. § 38-501).

2. For the reasons discussed in Division 1 above, the trial court erred by instructing the jury on the question of a confidential relationship between D. L. Bowen and the Bank. See *Davis,* supra.

3. Appellant contends that the trial court erred by instructing the jury that "when a payment is made by a debtor to a creditor holding several notes given by the debtor to the creditor, the debtor has the right to direct the note to which payments should be applied, and the creditor is obligated to follow this direction." See OCGA §

13-4-42 (Code Ann. § 20-1006).

The evidence showed that following the voluntary liquidation of the collateral, and after realizing that his father had executed guaranties on four of his notes, Lamar Bowen directed the Bank to apply his sales proceeds to those notes first, but the Bank refused. Appellant contends that the application of such payments was controlled by a provision in the contract: *"Any* proceeds of *any* disposition of Collateral may be applied by the Holder to the payment of expenses in connection with the Collateral, including reasonable attorney's fees and legal expenses, and any balance of such proceeds may be applied by the Holder toward the payment of such of the Liabilities, and in such order of application, as the Holder may from time to time elect." (Emphasis supplied.)

Where the parties have made an agreement respecting the application of payments, it must be observed. *Redfearn v. Citizens &c. Nat. Bank,* 122 Ga. App. 282, 286 (2) (176 SE2d 627) (1970). OCGA § 13-4-42 (Code Ann. § 20-1006) was therefore inapplicable to the disposition of the sales proceeds and the trial court erred in instructing the jury as to its provisions.

*Judgment reversed. Quillian, P. J., and Pope, J., concur.*

DECIDED JANUARY 31, 1984 —
REHEARING DENIED FEBRUARY 22, 1984.

*John C. Pridgen, Verlin L. Jones, Jr.,* for appellant.
*James W. Hurt, Thomas H. Hyman,* for appellees.