## 77248. DICKENS et al. v. CALHOUN FIRST NATIONAL BANK et al.
### (377 SE2d 715)

BEASLEY, Judge.

Mr. and Mrs. Dickens, plaintiffs, appeal the grant of summary judgment to Calhoun First National Bank and Frank Hutchinson, a bank officer.

Viewing the evidence in favor of plaintiffs, it shows that on September 7, 1984, they obtained a loan of $192,000, from the bank. The loan was to be repaid in eleven installments with the last installment due September 7, 1985.

On June 25, 1985, plaintiffs executed a 90-day promissory note to the bank for $206,755.77 with a maturity date of September 22, 1985. The note was renewed with a new maturity date of December 27, 1985. It was not assumable and was secured by a deed to secure debt on their property.

In late 1984 or early 1985, plaintiffs applied to the bank for another loan which was to be guaranteed by the federal Small Business Administration. Mrs. Dickens and her bookkeeper, who had filled out the application, took it to the bank. Hutchinson, who had processed and approved the earlier loans, told them this application would have to be filled out by a certified public accountant. He recommended to them the firm which employed his son-in-law.

The loan application was never processed by the bank, which was required to approve it before it would be forwarded to the SBA. Mr. Dickens admitted that insufficient funds checks written on a Florida account were deposited into his account with defendant a month after the application was submitted. This account with defendant was overdrawn by $16,000. As required by law, defendant reported what appeared to be a check kiting scheme to federal authorities. Mr. Dickens eventually came to the bank and picked up the SBA loan application in order to submit it to another bank.

Plaintiffs operated an auction barn on the property and, because of financial reverses, found it necessary to borrow approximately $55,000 in cash from Kraut, a local businessman. These loans were done on a handshake. On Christmas Day 1985, Kraut and Mr. Dickens had a conversation in which Kraut agreed to purchase 54 acres of the property, including the auction barn and rental houses. As consideration, Kraut was to cancel plaintiffs' debt to him and pay defendant $192,000 on the bank debt.

Kraut gave plaintiffs a check for $4,500 as payment for an old house trailer, the rental furniture in the houses, and some restaurant equipment. Another $5,500 was to be paid later. Kraut had conversations with some of plaintiffs' employees about their status and bought a set of cattle scales in preparation for running a cattle auction on the

property.

Mr. Dickens told Kraut that he owed the bank, but not how much. On December 28, Kraut went to the bank to discuss financing his purchase and Hutchinson told him he could not assume the note and that Mr. Dickens was in financial trouble. The payout of the note due on December 27 had not occurred.

Kraut became angry at the Dickenses, apparently realizing that plaintiffs stood to make $32,000 if he went through with the transaction. He told Mr. Dickens the deal was off and he would just wait out the situation.

On November 11, Mrs. Dickens, to whom Mr. Dickens had transferred his interest by deed that day, gave Kraut a security deed on the property for $38,000. On December 23, a second deed for $22,250 was given. These deeds were not recorded until January 17, 1986.

The bank sent a foreclosure notice letter in April 1986, and foreclosed and bought the property at public sale in May.

Plaintiffs sued both the bank and Hutchinson in 1987, alleging that defendants improperly disclosed confidential information to plaintiffs' prospective purchaser. The complaint was amended in February 1988, to allege that defendants violated the Equal Credit Opportunity Act by not processing the application and misrepresenting its status to plaintiffs.

Plaintiffs again amended the complaint in April and deleted the Equal Credit Opportunity Act claim. They added a claim that defendant Hutchinson was civilly and criminally liable for violation of 18 USCA § 215, i.e., receiving gifts by a bank officer, by causing plaintiffs to hire his relative to prepare the application. The amendment further alleged that defendants committed fraud by telling plaintiffs the loan was being pursued when it was not and that the disclosure of confidential information to the purchaser was tortious interference with plaintiffs' contract with him.

Defendants' Motion for Summary Judgment was filed in February 1988, and the order granting it was signed by the court in April, two days after the second amendment to the complaint, and filed in May.

The grounds upon which defendants moved for summary judgment related only to the two claims contained in the original complaint and the first amendment, which were the only claims pending when the motion was filed. That is all the trial court ruled on and that constitutes the scope of the appeal.

Plaintiffs having withdrawn their claim under the Equal Credit Opportunity Act, there is nothing in this regard for us to consider. Thus, we consider the grant of summary judgment only as to the improper disclosure of confidential information claim. As reflected by the later amendment, the act would amount to a ground for recovery

only in the context of the tort of interference with a contract right, there being no independent cause of action as to the disclosure. See *Big Bend Agri-Svcs. v. Bank of Meigs*, 174 Ga. App. 493, 494 (1) (330 SE2d 422) (1985); *Delta Diversified v. C & S Nat. Bank*, 171 Ga. App. 625, 635 (9 b) (320 SE2d 767) (1984); *Citizens Bank, Vienna v. Bowen*, 169 Ga. App. 896, 898 (1) (315 SE2d 437) (1984); *Williams v. Coffee County Bank*, 168 Ga. App. 149, 150 (2) (308 SE2d 430) (1983); *Boatman v. C & S Nat. Bank*, 155 Ga. App. 848, 850 (2) (273 SE2d 190) (1980). The original complaint was sufficient to raise this issue.

The intentional interference by a third party with existing contractual rights and relations constitutes a tort for which an action will lie. *Sheppard v. Post*, 142 Ga. App. 646 (1) (236 SE2d 680) (1977); *Piedmont Cotton Mills v. H. W. Ivey Constr. Co.*, 109 Ga. App. 876 (1) (137 SE2d 528) (1964); OCGA § 51-9-1.

The contract alleged to have been interfered with was the oral agreement by Kraut to buy the real property of plaintiffs, which was subject to the deeds to secure debt of both the defendant bank and Kraut. The oral agreement by Kraut to purchase the property was not binding on him since it was not in writing and signed by him. OCGA § 13-5-30. "While it is actionable to maliciously and without justifiable cause induce one to break his contract with another to the damage of the latter [Cit.], this presupposes the existence of a valid, enforceable contract; and where, as here, there was no such contract and the plaintiff had no contractual rights to be violated, a cause of action will not lie therefor. [Cit.]" *Charles v. Simmons*, 215 Ga. 794, 797 (3) (113 SE2d 604) (1960); *Integrated Micro Systems v. NEC &c.*, 174 Ga. App. 197, 199 (1) (329 SE2d 554) (1985); *Studdard v. Evans*, 108 Ga. App. 819, 822 (2) (135 SE2d 60) (1964).

Summary judgment on this claim was proper.

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED JANUARY 6, 1989.

*Lamb & Associates, T. Gordon Lamb, S. Robert Hahn, Jr.*, for appellants.

*Henry C. Tharpe, Jr., Cynthia K. Johnson*, for appellees.