HEMATITE MINING Co. *v.* EAST TENN., VA. & GA. RY. Co.

1. The general authority of a railway agent to give receipts for goods delivered for transportation extends only to such receipts as are given at the time the goods are delivered, or so near thereto as to be, according to business usage, a part of the *res gestæ.* Unless special authority be shown, receipts executed by the agent several months after the transaction, more especially if litigation was

then contemplated or had become probable, are not evidence to affect the company.

2. Information furnished a witness by an agent of a railway company as to the contents of a record .kept by the company is inadmissible in evidence against the company when it appears that the information given related to transactions long past, and it does not appear that the furnishing of such information was within the scope of the agent's employment.

3. Although the plaintiff, while a witness on the stand, testified generally that he remembered certain facts stated by him, and that he used certain books and *memoranda* to refresh his memory (the *memoranda*, but not the books, being then before him), his evidence as to the numbers and destinations of certain cars, and the dates of their shipment, was inadmissible, it further appearing from his testimony that he could state none of these particulars without referring to the books, or to the *memoranda* he had taken therefrom, and that the entries in the books were sometimes written by himself and sometimes by another in his employ, it being also apparent that at the time of testifying the witness was unable to state which entries were made by himself and which by the other.

July 17, 1893.

Action for damages. Before Judge HENRY. Floyd superior court. September term, 1892.

JUNIUS F. HILLYER, for plaintiff. McCUTCHEN & SHUMATE and HOSKINSON & HARRIS, for defendant.

LUMPKIN, Justice.

1–2. The plaintiff sought to recover damages for an alleged failure to deliver certain car-loads of ore, claimed to have been received by the railway company for transportation. If the agent of the company knew personally of the delivery of the ore, he would have been a competent witness to prove the fact, and should have been introduced for this purpose. Instead of doing this, however, the plaintiff undertook to make out its case in part by tendering receipts for the ore, executed by this agent many months after the transaction. The rejection of this evidence is one of the errors complained of. In our opinion, the ruling of the court below was right. To render such receipts admissible, it must

affirmatively appear that they were given at the time the goods were delivered for transportation, or so near thereto as to be, according to business usage, a part of the *res gestæ*. Otherwise, they would be the mere declarations of the agent, not made *dum fervet opus*, and therefore not binding upon the company he represented. Under such circumstances, the agent of a railway company has no authority to bind it by admissions of this kind, because it is manifestly not within the scope of his authority as agent to make them. It would be very dangerous to receive in evidence against a principal—whether an incorporated company or otherwise—declarations of an agent made long after the business in which the agent was acting had been transacted. Of course, the individual is bound by his own admissions deliberately made, even if they relate to a matter long past. This is so because he is supposed to have in mind at all times his own interests, and presumably he will admit nothing against his interests which is not the truth. The policy of the law is different with reference to agents, and they cannot be allowed to talk away, either in writing or otherwise, the rights of their principals concerning a matter with which such agents have long since ceased to have any connection whatsoever. If, instead of offering written receipts, the plaintiff had offered the parol declarations of the railway company's agent, it is manifest that such sayings would have been properly excluded as mere hearsay. The fact that these declarations were reduced to writing and signed by the agent, does not in the least change the principle. Of course, receipts obtained at the same time, not signed by the agent at all, but which the plaintiff proposed to show he intended to sign, but inadvertently omitted to do so, could not be received.

The case before us affords an apt illustration of the rule above stated. The receipts in question were pro-

cured from the agent after the present litigation was in actual contemplation, and for the very purpose of being used as evidence in this case. It would have been better, and more in accord with the rules of evidence, to put the agent himself on the stand as a witness, and thus allow the company an opportunity, on cross-examination, to sift the correctness of his statements, and to test the reliability of his sources of information or recollection, a substantial right of which the company would have been deprived if the receipts themselves had been received in evidence.

What has already been said with reference to the receipts offered is also applicable to the effort of the plaintiff to put in evidence, by introducing its own attorney as a witness, certain information which had been furnished the latter by an agent of the railway company at a point other than the alleged place of shipment, as to the contents of a record kept by the company in one of its offices at that point, it appearing that the information thus given related to transactions long past, and there being nothing to show that it was within the scope of this agent's duty or authority to furnish such information, or even that he himself kept the record in question, or had then, or had ever had, any personal knowledge of the matters concerning which he spoke.

3. The plaintiff in this case, though its name would indicate it was either a corporation or a partnership, really consisted of but one natural person, Linton Sparks. Having failed in every other way to make out his case, he offered himself as a witness, and undertook to testify from his own personal knowledge to the delivery of certain car-loads of ore to the railway company. Although he testified in general terms that he remembered the numbers by which these cars were identified, their destinations and the dates of their shipment, to be as stated by him on the stand, and that he used certain books and

*memoranda* to refresh his memory, it is apparent he did not in fact have any definite or distinct recollection concerning the matters about which he spoke. He admitted, on cross-examination, that without the *memoranda* "he could not remember numbers, dates or destinations of any particular car." The books which he stated he used to refresh his memory were not before him while testifying, and he relied solely upon *memoranda* taken therefrom. It further appeared from his testimony that the entries in the books were sometimes made by himself, and sometimes by another in his employ, and he was unable to state which entries had been made by himself, and which by the other. It is therefore manifest that, deprived of his *memoranda*, the witness would have been utterly unable to state anything definite concerning the alleged shipment of the cars, and that his professed recollection of the transaction really amounted to nothing. He was simply undertaking to swear to the correctness of information he himself had derived solely by consulting certain books and copying extracts therefrom. Of the reliability of the books themselves, there was no proof whatsoever. If the entries in the books had all been made by himself, and he had sworn to their correctness, and had stated that he had, at the time such entries were made by him, personal knowledge of the matters in question, his testimony would have been admissible. It appearing from his own testimony, however, that some of these entries were made by another person, and he not undertaking to distinguish those entries from others made by himself, or to state that he had ever had any personal knowledge of the matters to which they related, his testimony can only be characterized as being, to a greater or less extent, mere hearsay, and utterly unreliable. No reason appears why the books themselves, together with proper proof of their correctness, were not produced. Had this been done, the wit-

ness might at least have verified the correctness of his statements based on entries made by himself, and thus have given some force to the assertion that his memory had thereby been refreshed. We think that his testimony, in the manner in which it was presented, was clearly inadmissible, and that the court properly rejected the same.

The plaintiff having entirely failed to make out a case against the railway company, a nonsuit followed as a matter of course.          *Judgment affirmed.*