### 3241.  REDFEARN *v.* THOMPSON.

1. In an action for slander, where the language alleged to have been used imputes to the plaintiff guilt of an indictable offense, he establishes a prima facie case upon proof that the slanderous language, substantially as alleged in the petition, was used by the defendant; and, without more, the plaintiff is presumed to be innocent of the crime charged.

This is true whether the defendant pleads justification or not. Therefore it was proper, where the alleged slanderous words charged a crime, to instruct the jury that "the plaintiff is presumed to be innocent of the charges imputed to her by the alleged slanderous words of the defendant, set out in the plaintiff's petition; and until or unless it is overcome by satisfactory proof, this presumption of innocence in the plaintiff's favor remains with her through every stage of the trial."

2. Evidence that the plaintiff's general character or reputation was bad at the time the defendant used the alleged slanderous words, or before that time, presents no defense to an action for slander, based upon words charging a specific crime. The fact that the character of the plaintiff in an action for slander is bad may serve to mitigate the damages, but can not prevent recovery.

3. The court having properly instructed the jury that evidence of the bad character of the plaintiff, who sought to recover damages for an alleged slander, might be considered by the jury in assessing the damages, it was not error, in the absence of an appropriate timely request, to omit any further instruction upon the subject. The language thus used in referring to the evidence upon the subject of the plaintiff's character was favorable to the defendant, and the jury could not have been misled thereby into increasing such damages as might be awarded; and if fuller instructions were desired they should have been requested.

4. The finding of the court, when sitting in lieu of common-law triors, as to the competency of jurors, is not subject to review. A challenge for principal cause being considered as a matter of law, a judgment of the trial court thereon may be reviewed, but in case of a challenge to the favor, the decision of the judge as trior, being essentially the determination of a question of fact, is final and conclusive. Therefore, the judge's finding as to the jurors who were attacked for prejudice and bias can not be made a ground of error.

5. An affidavit given by a juror after the verdict was rendered, to the effect that he did not voluntarily assent to the verdict, can not be received. A juror will not be heard to impeach the verdict after its record.

6. The evidence authorized the verdict, and there was no error in refusing a new trial.

DECIDED FEBRUARY 24, 1912.

Action for slander; from city court of Thomasville—Judge W. H. Hammond. January 14, 1911.

*Fondren Mitchell, Branch & Snow,* for plaintiff in error.

*Roscoe Luke, Theodore Titus,* contra.

RUSSELL, J. Mrs. Thompson brought suit for slander, and obtained a verdict for $500. Exception is taken to the judgment overruling the defendant's motion for a new trial. Inasmuch as it can not be said that the verdict is without evidence to support it, we shall not discuss the general grounds of the motion for new trial; for unless the verdict was induced by some of the errors as-

signed in the other grounds of the motion, there would be no theory upon which this court could order another trial.

The slanderous words alleged in the plaintiff's petition imputed to her guilt of the offense of adultery, and adultery and fornication. In the twelfth paragraph of the petition it was alleged that the defendant used certain slanderous words which imputed to the petitioner not only the crime of adultery, but also the crime of murder. By an amendment to his original answer the defendant pleaded justification, so far as it was alleged that he had charged the plaintiff with adultery. We purposely omit any reference to the loathsome details of the very voluminous testimony in the case. The defendant introduced a mass of testimony in support of his defense that the statements made by him were true, and, on the other hand, there was testimony which would have authorized the jury to believe that the statements made in regard to the plaintiff were wholly false. Testimony tending to impeach some of the witnesses was introduced. The court also permitted testimony to the effect that the general character of the plaintiff for chastity was bad, and, in rebuttal, testimony from other witnesses that her character was good. If, in spite of the evidence against her, the jury saw fit to award the plaintiff a verdict, the amount of the verdict—$500— can not be said to be immoderate. And as the evidence in her behalf (which the result shows was believed by the jury) would have justified even a much larger finding in her favor, there was no error in refusing a new trial, unless some of the errors alleged in the motion for a new trial prejudiced the defendant's case and contributed to induce the verdict reached.

1. The court charged the jury as follows: "At the outset of this trial, gentlemen of the jury, the plaintiff, Mrs. Thompson, is presumed to be innocent of the charges imputed to her by the alleged slanderous words of the defendant, set out in the plaintiff's petition; and until or unless it is overcome by satisfactory proof, this presumption of innocence in the plaintiff's favor remains with her through every stage of the trial." Error is assigned upon this instruction, upon the ground that it gave to the plaintiff the benefit of a presumption applicable to criminal cases alone; there being no presumption of innocence in civil cases. We do not think that the exception is meritorious, and certainly the charge is not subject to the complaint made against it, as requiring the defendant to estab-

lish his plea of justification to the satisfaction of the jury beyond a reasonable doubt, as would be true in a criminal case. In fact, when the judge told the jury, in this charge, that the plaintiff— who was alleged to have been slandered by being charged with the commission of a criminal offense—was presumed to be innocent of the charge, it was tantamount to saying that if she proved the use of the alleged slanderous words, or if the defendant admitted them, it cast upon him the burden of proving the truth of his statements. The statement of the judge dealt with the burden of proof in the case, and not with the degree of mental conviction necessary to enable either the one party or the other to successfully carry that burden. This is plain when he says that the presumption is to be "overcome by satisfactory proof." He did not tell the jury that the defendant had to establish the guilt of the plaintiff by proof satisfying their minds to the exclusion of a reasonable doubt. The case being a civil cause, the jury would naturally infer that by "*satisfactory* proof" was meant the preponderance of the evidence; but the judge not only instructed the jury very fully as to the meaning and effect of the phrase "preponderance of evidence," but also defined the term "satisfactory proof" as being that degree of reasonable and moral certainty produced by a preponderance of the evidence. On principle it would seem, where one is slanderously charged with a crime, and he who makes the charge pleads justification, that the same burden of proof in establishing the truth of the alleged slander should be placed upon the defendant who pleads justification as would devolve upon the State were the plaintiff on trial for the crime itself; that is to say that the defendant in an action for slander or libel who has pleaded justification should be required to prove the crime which he has imputed to the plaintiff, by evidence which satisfies the jury of the plaintiff's guilt of the crime charged, beyond any reasonable doubt. This rule (which is sustained in 2 Starkie on Slander, 96, 2 Greenleaf on Evidence, § 426, and 2 Addison on Torts, 386) was for some time considered the rule in this State, as will be seen from the decisions in *Ransone* v. *Christian*, 56 *Ga.* 352, and *Williams* v. *Gunnels*, 56 *Ga.* 521, but in *Atlanta Journal* v. *Mayson*, 92 *Ga.* 640 (18 S. E. 1010, 44 Am. St. R. 104), these rulings were reviewed, criticised, and disapproved, with the statement that the question was not directly presented in either of them. Inasmuch, however, as the decision in

the case of *Atlanta Journal* v. *Mayson,* supra, was rendered by only two Justices, and the decision in *Williams* v. *Gunnels,* supra, was rendered by a full bench, if the question were now squarely before us it might well be said to be doubtful which precedent is controlling. However, as we pointed out above, the charge of the judge is not in conflict with the ruling in *Atlanta Journal* v. *Mayson,* supra, because, with his explanation of the term "satisfactory proof," as contained in the latter portion of his charge, it was very plain to the jury that the defendant was only required to establish his plea of justification by a preponderance of the evidence; the court not having charged the jury that the defendant was required to adduce a degree of proof which would satisfy the minds of the jury, beyond a reasonable doubt, of the plaintiff's guilt of the charge made against her by the defendant.

Neither did the court err in charging the jury that the plaintiff was presumed to be innocent of the crime imputed to her by the defendant. The instruction on this point was in reference to who carried the burden of proof, and not to the degree of proof necessary to enable one to carry it successfully. Every person is presumed to have a good character until the contrary is shown, and to be innocent of crime, until there is evidence of some kind to establish its existence. The presumption to which the judge referred exists regardless of the degree of proof which in any particular case may be necessary to rebut it. "There are many authorities which hold that the law presumes that a defendant has a good character. This was held in the case of Stephens *v.* State, 20 Tex. App. 269; and in the case of Cluck *v.* State [40 Ind. 270], the Supreme Court of Indiana held that the law presumes that every man has a good character, and that it would have been competent for counsel to have commented on such presumption. This rule is also laid down in Sackett on Instructions to Juries, p. 651." *Bennett* v. *State,* 86 *Ga.* 404 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465). In *Goggans* v. *Monroe,* 31 *Ga.* 301, the judgment of the lower court was reversed because it was held to have been error that the court refused to charge a request to the effect that the plaintiff was entitled to the legal presumption, in the absence of evidence proving to the contrary, that his character was good. In an action for slander, where the language alleged to have been used imputes to the plaintiff guilt of an indictable offense, he establishes a prima facie case

upon proof that the slanderous language, substantially as alleged in the petition, was used by the defendant; and, without more, the plaintiff is presumed to be innocent of the crime charged. This is true whether the defendant pleads justification or not. Therefore it is proper, where the alleged slanderous words impute a crime, to charge the jury that the plaintiff is presumed to be innocent of the charges imputed by the alleged slanderous words of the defendant, set out in the plaintiff's petition, and that until or unless it is overcome by satisfactory proof, this presumption of innocence in the plaintiff's favor remains through every stage of the trial.

2. Exception is taken to the following instruction in the judge's charge: "If you find the plaintiff to be entitled to recover, and if you believe, from the evidence, that the plaintiff's general character or reputation, at and before the speaking by defendant of the slanderous words in question, was bad, you would have the right to take that fact into account, in assessing the plaintiff's damages." Two assignments of error are predicated upon this instruction. Both of them are without merit. In the first it is insisted that if the jury should have believed, from the evidence, that the plaintiff's general character or reputation was bad, and if they should have believed that the defendant did not use the words charging the crime of murder, the plaintiff could not recover at all. In the second it is urged that the charge gave the jury no intimation as to how they could take the fact of the plaintiff's bad character into account, either by way of diminution or increase in the amount of damages. Evidence that the plaintiff's general character or reputation was bad at the time the defendant used the alleged slanderous words, or before that time, presents no defense in an action of slander predicated upon words charging a specific crime. The fact that the character of the plaintiff in an action for slander is bad may serve to mitigate the damages, but can not prevent recovery.

3. The court having properly instructed the jury that evidence of the bad character of the plaintiff who sought to recover damages for an alleged slander might be considered by the jury in assessing the plaintiff's damages, it was not error, in the absence of an appropriate timely request, to omit any further instruction upon the subject. The language used in reference to the evidence upon the subject of the plaintiff's character was favorable to the defendant, and the jury could not have been misled thereby into increasing

such damages as might be awarded, and if fuller instructions were desired they should have been requested.

4. Numerous affidavits were presented, attacking B. C. Johnson, the foreman of the jury, and S. M. Chastain, a member of the jury, upon the ground that they were incompetent, through prejudice and bias, and disqualified to serve as jurors, because they had formed and expressed a fixed opinion in favor of the plaintiff before they were empaneled to try the case. A counter-showing was made in behalf of these jurors, and the court held them to be competent, by overruling these grounds of the motion for a new trial. Among the affidavits in support of the jurors are those of a number of witnesses testifying to the good character of each of the jurors. It is insisted that the judge should not have considered the affidavits presented in support of the good character and standing of the jurors, but should have repelled the evidence upon the subject of the character of the jurors who were attacked. The judge was sitting as a trior, and we see no reason why he could not take into consideration the evidence as to the integrity and general good character of the jurors, in connection with the other testimony before him. Granting that testimony to the effect that the jurors were men of high character and good standing, would, in some instances, be irrelevant, there was, in the present instance, direct conflict between the witnesses as to material statements which were related as having been made by each juror. The jurors were each witnesses, and it is likely that the effect was to impeach these witnesses, by proving contradictory statements; and, in any case, proof of good character may tend to sustain a witness whose impeachment is sought by proof of contradictory statements.

But this is unimportant, for the finding of the judge upon the subject of a juror's prejudice or bias, or the absence of disqualifying prejudice or bias, is not subject to review. The decisions of the Supreme Court holding to the contrary were rendered prior to the passage of the act of 1856, which substituted the trial judge for the triors known to the common law. The cases of *Wade* v. *State,* 12 *Ga.* 25, and *Anderson* v. *State,* 14 *Ga.* 709, which are cited by counsel for plaintiff in error, are rulings made prior to the act of 1856. In the case of *Bishop* v. *State,* 9 *Ga.* 129-30, Judge Lumpkin well said, "It is the pride of the constitution of this country that all cases should be tried by jurors from whose breasts are ex-

cluded all bias and prejudice. To break down any of these safeguards, so wisely erected, and to suffer jurors to decide upon the life and liberty of the citizen, whose minds are poisoned by passion or prejudice, would be to stab the upright administration of justice in its most vital parts." And the decisions reversing the judgment of the court below refusing a motion for new trial in such cases were of a still earlier date. The question is fully discussed in *Turner* v. *State,* 114 *Ga.* 421 (40 S. E. 308). The distinction between a challenge for principal cause and challenges to the favor is there pointed out, and it is held, as to a principal challenge, that it must be principally a question of law, submitted to the court as a court, and that in such a challenge the decision of the court is subject to review. However, as to a challenge to the favor, it was held in that case (citing numerous authorities) that "Under our system, where the court is substituted for the triors to decide challenges to the favor (*Reid* v. *State,* 20 *Ga.* 688), the court's decision as to such a challenge is on a footing with that of the triors, and is final and conclusive. Thomp. & Mer. Jur. §§ 238, 249, et seq.; Thomp. Trials, § 100; 12 Enc. Pl. & Pr. 470. 'The decision of the judge, as trior, can no more be made a ground of error before this court than the verdict of triors could have been.' *Galloway* v. *State,* 25 *Ga.* 596." Consequently, the judge's finding as to the jurors who were attacked for prejudice and bias in this case can not be made a ground of error.

5. One of the jurors who tried this case made an affidavit that the verdict returned was not his verdict, that it did not speak his opinion of the law or of the evidence, and he did not concur in it; that he became ill during the deliberations of the jury, and needed a doctor, and so informed the other members of the jury, and insisted that he be given the services of a doctor, but that some of the members of the jury, including the foreman, told him that before he could get the services of a doctor he must allow them to return a verdict for the plaintiff, and that although he had been in favor of a verdict for the defendant, he agreed that the verdict for the plaintiff should be returned into court, in order that he might get a doctor and be relieved of his illness, but the verdict did not speak the truth of the case, according to his opinion, and was not his verdict. The judge declined to consider the juror's affidavit impeaching the verdict; and he could not have done otherwise, under

the repeated rulings in this State. A juror can not be heard to impeach the verdict returned into court, after its record. The principle succinctly stated in *Bishop* v. *State,* 9 *Ga.* 121 (4), that "the affidavit of a juror will not be received to impeach his verdict," has been reiterated too often to permit of space for citations.

6. It appears that the trial was free from error; and the evidence, as we have heretofore said, being sufficient to authorize a finding for the plaintiff, there was no error in refusing a new trial.

*Judgment affirmed. Pottle, J., not presiding.*