33521.   VAN GUNDY *et al. v.* WILSON *et al.*

430

DECIDED JUNE 14, 1951.  REHEARING DENIED JULY 18, 1951.

*Briggs Carson Jr., Robert R. Forrester,* for plaintiffs in error. *John T. Ferguson,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Grounds 4, 5, 6, and 7 of the amended motion for a new trial complain of the admission of testimony by Ralph Wilson that the Van Gundys objected to customers of plaintiff's restaurant parking in the street; that they were always squabbling about something; that each individual defendant made these statements; that Jack entered plaintiff's restaurant and informed a customer that he would have to move his truck, as a result of which he and others discontinued their patronage; that on another occasion he caused two trucks to move on, as a result of which four persons who had intended to eat did not stop. The objections are that the evidence is irrelevant, immaterial, that it does not tend to prove the words declared upon, and that "they," referring to all the defendants, does not specify which defendant is meant and is in consequence too vague and indefinite. As to the last objection, the plaintiff explained the use of "they" by saying that each of the defendants made the statements in question. He specified Jack Van Gundy as the person who caused the various drivers to move. The testimony was, in this respect, sufficiently definite. And, while not relevant upon the issue of the alleged slander itself, the testimony tended to show

hostile acts on the part of the various defendants toward the plaintiffs at about the time of the alleged slander and thus to show the state of mind of the parties at that time.

Where a slander is alleged and the defendant, while denying that it was spoken, admits the use of other and milder words and pleads a qualified privilege, proof that the communication as made was privileged will defeat recovery unless actual malice on the part of the defendant exists. Code, § 105-710; *Nicholson v. Dillard,* 137 *Ga.* 225 (73 S. E. 382); *Ivins* v. *Louisville & Nashville R. Co.,* 37 *Ga. App.* 684 (141 S. E. 423); Conklin *v.* Augusta Chronicle Pub. Co., 276 Fed. 288; *Pearce* v. *Brower,* 72 *Ga.* 243; *Central of Ga. Ry. Co.* v. *Sheftall,* 118 *Ga.* 865 (45 S. E. 687); *Doyal* v. *Atlanta Journal Co.,* 82 *Ga. App.* 321 (60 S. E. 2d, 802). Evidence not relevant to prove the slanderous utterance may thus be relevant upon the question of malice in that it is competent to show the state of mind of the parties at the approximate time of the remarks, and is of probative value. Wigmore, Evidence (3rd ed.) Vol. II, § 403; 132 A. L. R., 927. If relevant for this purpose it is competent evidence to show malice. *Tolleson* v. *Posey,* 32 *Ga.* 372; *Adkins* v. *Williams,* 23 *Ga.* 222 (1); *Craven* v. *Walker,* 101 *Ga.* 845 (29 S. E. 152). It was not relevant, of course, on the issue of the truth or falsity of the charge, but no error is assigned upon the court's failure to limit the evidence to this issue, and no objection was made on that ground. Grounds 4, 5, 6 and 7 are therefore without merit.

■ Objection is made in ground 8 to the court's refusal to allow the following question: "Do you consider drunkenness on the job good for business, Mr. Wilson?" on the ground that defendant intended to show that one or the other of the plaintiffs was drunk during a majority of the time. Evidence of the drunkenness of Mrs. Wilson was later admitted, but the plaintiff's opinion on this subject was not relevant to any issue involved. The 8th ground is without merit.

■ Ground 9 of the amended motion complains of the admission into evidence of the testimony of plaintiff R. R. Wilson over objection, as follows: "Well, any general record is a permanent record and you have got to have a record of original entries to post from and I certainly did post from the original en-

434

tries and they are certainly correct. This is a book of original entries and it shows my receipts. [Stating receipts for each month after referring to book]. I prepared this paper you hand me and it is correct; it shows the amount of income from my business from January, 1947 to date—it is true and correct and shows the general trend of my business." The objection was to the witness reading from the book as a proper foundation had not been laid for such evidence, it being contended that the books had not been properly identified or proved.

Books of account of any person doing a regular business and keeping daily entries thereof may be admitted as proof of such accounts upon proof that the book tendered is the book of original entries, the party's oath being sufficient. *Chambers* v. *Williams Bros. Lumber Co.*, 80 *Ga. App.* 38, 40 (55 S. E. 2d, 244); Code, § 38-310. The Code does not provide, however, that the books *must* be admitted in evidence, but only that they *may* be. Testimony of the parties who have knowledge of the facts from which the books are made up is in itself primary evidence and may be corroborated by the books themselves. *Smith* v. *Southern Spring Bed Co.*, 16 *Ga. App.* 449 (85 S. E. 612); *Swift* v. *Oglesby*, 8 *Ga. App.* 540 (70 S. E. 97). Although the books were tendered it does not appear that they were admitted in evidence. However, their correctness was attested to by the witness who kept them. Code § 38-1707 provides as follows: "A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he finally shall speak from his recollection thus refreshed, or shall be willing to swear positively from the paper." *Williams* v. *C. & G. H. Kelsey & Halsted*, 6 *Ga.* 365 (2); *Hematite Mining Co.* v. *East Tenn., Va. & Ga. Ry. Co.*, 92 *Ga.* 268 (18 S. E. 24). This exception is without merit.

■ Ground 12 of the amended motion complains of the following testimony of Mrs. Wilson as a conclusion: "As to who looks after the restaurant while I am on duty, I have competent attendants and they are under Mr. Wilson's supervision." While the witness, who was the employer of the attendant and no doubt had personal knowledge as to their competency, testified as to this conclusion without stating the facts upon which she based the same, the competency of the attendants was not such an

issue as to render her testimony in this respect harmful error. In order for the admission of illegal evidence to constitute reversible error, injury as well as error must be shown. *Wheeler* v. *State, 23 Ga.* 292 (2).

■ Grounds 13 through 20 are objections to portions of the testimony of Mrs. Burton and Mrs. Ontko, the persons to whom the alleged slanderous words were uttered. Ground 21 contends that the court should have sustained a motion to rule out all of the evidence of these witnesses on the ground that they were guests at the Van Gundy cottages and asked the Van Gundys about a place to eat, and there was a moral duty upon the Van Gundys to direct their guests, because of which fact the defendants' communications were conditionally privileged.

To the question, "Did any of the Van Gundys say anything to you about Wilson's Cafe, whether or not it was a good place to eat or not?" the reply was, "They told us that, although it was on their property, they did not recommend it as a good place of eating; they were sorry that they could not recommend it; that they thought they would have about two weeks and their lease would be up, and that they were going to install their own cafe there then." Other statements were as follows: "They told us that someone they knew—I don't recall just who it was—had gotten ptomaine poison there, and that they would not be responsible for anything we ate there. . . The young one was the one when we mentioned the kitchen. . . The old one came back and she said she was sorry we had gone over there as they would not be responsible; they had warned us ahead of time they would not be responsible; that we could not hold them for anything that happened to us. . . As to her saying anything about them taking over the lease, she said that their lease would be up in about two weeks, and they were going to have their own cafe there. That was the young woman—young Van Gundy—talking to you [sic]. No, I did not see the young man there, he was not around. . . They said it was not a place to eat; that it was dirty, and one thing and another people that ate there would get ptomaine poisoning. Both of the Gundys made that statement to me, the old lady and the young lady too."

Each of these witnesses made it clear that the person re-

ferred to was the defendant Mrs. Virginia Van Gundy in the conversation after they had visited Wilson's Cafe, and that Miss Violet Van Gundy made the statements before they visited it; that both said substantially the same things, and that Jack Van Gundy had no conversation at any time with the witnesses and made no statements to them. While the word "they" in respect to three defendants who were sued severally was ambiguous in the first instance and should not have been used, the ambiguity was cleared up by the specific statements of each of the witnesses so that the jury could not have been confused as to which of the defendants made the remarks in question, and therefore the use of the word "they" in certain instances would not be error requiring a reversal of the case.

Nor was the testimony objectionable on the ground that the words sworn to be used were not the precise words declared upon. Both witnesses testified that Mrs. Van Gundy and Miss Van Gundy each stated to them on separate occasions that the restaurant was dirty, that people who had eaten there had gotten ptomaine poisoning, and that they did not recommend the place. The words alleged were "not to eat at Wilson's Cafe, that it was not a clean and wholesome place to eat; that several people had contracted ptomaine poisoning as a result of eating at Wilson's Cafe, and that they were going to take over Wilson's Cafe." "If the words proved convey practically the same meaning as the words laid·the variance will be held immaterial, or else the complaint may be amended as a mere matter of practice." Newell, Slander and Libel (4th ed.) § 664. The plaintiff established a prima facie case, so far as the language is concerned, upon proof that it is *substantially* as alleged." *Carter* v. *Norton*, 25 *Ga. App.* 79 (1) (102 S. E. 648); *Redfearn* v. *Thompson*, 10 *Ga. App.* 550 (1) (73 S. E. 949). The objections to admission of this evidence and to the motion to rule it out on this ground are without merit. The same ruling applies to Ground 23, contending that it was error to overrule a motion, after Jack Van Gundy was stricken as a party defendant, to rule out the witness' testimony on the ground that the word "they," whenever used, referred to Jack Van Gundy as well as the other defendants. While the court should not permit the witnesses to refer to the defendants in a

plural sense when repeating the slanderous remarks, neverthe-less, the testimony as a whole clearly showed the remarks at-tributable to each defendant on each occasion, for which reason a reversal should not be required on this ground.

■ Ground 11 assigns error on allowing one of the plaintiffs to testify: "On and prior to the time this suit was filed, I had knowledge of and experience with the Van Gundys about them running off people from our place—they have been known to run people off, yes," on the ground that it is a conclusion. The witness apparently meant that from her knowledge and ex-perience with the defendants she knew they had run people off and the language so construed would be a statement of fact and therefore admissible. In *Allen* v. *State,* 71 *Ga. App.* 517, 518 (31 S. E. 2d, 107) it is held that where a witness testifies as to what he observes, hears or smells it is not a conclusion. The witness here, having testified as to her knowledge and experience of the Van Gundys in this respect, it appears to have been knowledge gained by her from observation. However it would, of course, open this subject for a thorough cross-examination. The assignment of error is without merit.

■ Special grounds 24 and 25 complain of the exclusion of certain evidence but do not show, as to the first of these grounds, what answer was expected, and, as to both of them, that it was material and would have benefited the complaining party. These assignments of error are without merit. *Bowden* v. *Bow-den,* 125 *Ga.* 107 (53 S. E. 606); *Griffin* v. *Henderson,* 117 *Ga.* 382 (43 S. E. 712).

■ Special ground 27 complains of the charge of the court in regard to punitive damages. In substance, the court defined punitive damages and informed the jury that to authorize such award the evidence must satisfy them that there was some wilful misconduct on the part of the defendants which would give rise to the presumption of a conscious indifference to con-sequences. It is contended that this charge was error because, the communication being privileged, the evidence of malice as an aggravating circumstance could not be used for the purpose of awarding punitive damages, and the same malice be a basis of making the statements actionable, as to do so would in ef-fect be to allow double damages for the same thing.

In this case the charge of the court is not a part of the record and we cannot determine how it may have been qualified in other portions of the charge. "Isolated and incomplete portions of the charge excepted to cannot be intelligently considered in the absence of the entire charge, unless the portion of the charge excepted to is without qualification and is inherently erroneous." *Cornett & Co.* v. *Newsome*, 27 *Ga. App.* 340 (2) (108 S. E. 254). The portion excepted to is not inherently erroneous, as malice may be an aggravating circumstance justifying the award of punitive damages. See *Barker* v. *Green*, 34 *Ga. App.* 574 (130 S. E. 599); *Ingram* v. *Kendrick*, 48 *Ga. App.* 278 (2) (172 S. E. 815); *Warner Bros. Pictures Inc.* v. *Stanley*, 56 *Ga. App.* 85 (7) (192 S. E. 300).

It should be observed, however, as this case is to be tried again, that frequently evidence of malice between the parties as shown by other transactions between them may be relevant insofar as it may render actionable words otherwise protected by privilege, and still not be closely enough connected with the transaction to be relevant as an aggravating circumstance which would support exemplary damages. Malice supporting punitive damages should be malice in the transaction out of which the cause of action arises. "It must not be assumed that every piece of evidence which is admissible to prove malice when malice is in issue is also admissible in aggravation of damages. Evidence may be given of antecedent or subsequent libels or slanders to show that a communication prima facie privileged was made maliciously; and also when evidence is necessary to explain the meaning of language which without it appears ambiguous. . . And when such evidence is admissible the jury may be instructed to give no damages in respect of it. It is only when a subsequent libel has immediate reference to the one sued on that it will be admitted as a necessary part of the res gestae." Newell, Slander & Libel, supra, § 761. An example of malice as a part of the transaction is found in *Doyal* v. *Nix*, 82 *Ga. App.* 321 (60 S. E. 2d, 802) where, immediately before publishing allegedly libelous articles concerning the plaintiff, the defendant had stated to the plaintiff that he would put him in his grave many years before his time with the articles he would write about him in his paper. But a mere general ill

will between the parties, which is no part of the res gestae, cannot be so considered. Evidence that the defendant on another occasion had an indictment issued against the plaintiff which the grand jury ignored is competent "not to enhance the damages but to show malice. It has often been ruled that for this purpose acts done or words spoken other than those which are the gravamen of the suit pending are competent, though it has been said that the court should charge the jury not to increase the damages by reason of such other words spoken or acts done. These are only evidence of the quo animo." *Tolleson* v. *Posey,* 32 *Ga.* 372.

Evidence of the republication of the slander shortly before or shortly after the publication of the words declared upon is admissible to show the quo animo and malice of the speaker. *Adkins* v. *Williams,* 23 *Ga.* 222; *Craven* v. *Walker,* 101 *Ga.* 845. In like manner, conversations of the defendant may be introduced to prove lack of malice. *Lamb* v. *Fedderwitz,* 71 *Ga. App.* 249 (30 S. E. 2d, 436). The testimony of a witness operating a competitive tourist court that, "Miss Violet Van Gundy advised me not to send guests of my tourist court to Wilson's Cafe; she said it was not a very good place to eat," is admissible on the question of malice to rebut the privilege, leaving it to the jury to determine whether or not under all the circumstances the defendant attempted to use the privilege for the mere purpose of venting private spite. Ground 22, complaining of the admission of this testimony, is without merit. However, the republication was not pleaded, and the defendant was not put on notice that the plaintiff would attempt to use it as the basis for allowance of punitive damages. "Where a plaintiff sues to recover punitive damages for a particular wrongful act and relies, as evidencing the animus with which that act was committed, upon the commission of a wholly independent act, done at a different time and place, the defendant should be advised by the plaintiff's pleadings of the case he is expected to meet." *Central of Georgia Ry. Co.* v. *Augusta Brokerage Co.,* 122 *Ga.* 646 (3) (50 S. E. 473).

■ Ground 10 of the amended motion complains of error in allowing the plaintiff to testify as to the profits of his business for the years 1946, 1947, 1948 and 1949 after examination of

his books of account, he stating in this regard: "All the profits I stated I made during that period were net profits as far as the operating expense was concerned. . . Those earnings were from the operations of the grocery store, and the filling station and the cafe—from all three of them—the three places are not separated on the books." The objection is that the figure given, representing the unsegregated profits of three businesses, would not be any guide for any loss sustained from the operation of Wilson's Cafe. The plaintiff testified that he ran a coffee and sandwich shop in connection with the cafe, that he also operated a grocery store, and that he sold gasoline and oil. The slander alleged was calculated to injure the plaintiffs in their trade or business of running a restaurant known as Wilson's Cafe. Decrease in the trade or business slandered may always be shown as general damages, although the plaintiff would have to allege and prove as an item of special damage the loss of any particular customers. See J. M. James Co. v. Continental National Bank (Tenn.) 51 L.R.A. 255; 17 R.S.L. § 198; Newell, Slander and Libel (4th ed.) § 324; *Walker* v. *Sheehan,* 80 *Ga. App.* 606 (2), 611 (56 S. E. 2d, 628) ; Code, § 105-702. General damages are such as the law presumes to flow from any tortious act, and may be recovered without proof of any amount. Code, § 105-2006. In ex delicto actions the plaintiff may recover for such damage as may be directly traceable to the negligence of the defendant or his failure to observe a duty owing to him. *Carr & Co.* v. *Southern Ry. Co.,* 12 *Ga. App.* 830 (2) (79 S. E. 41). Further, in libel actions, special damages which are not shown to be the result of the defamation are not recoverable. *Ivins* v. *Louisville & N. R. Co.,* 37 *Ga. App.* 684 (supra). While the law presumes injury to one in his trade or profession by reason of slanderous words spoken against that trade or profession, it could not presume injury to some unrelated activity thereby. The plaintiffs here owned and operated Wilson's Cafe and allege that this business has been damaged by the defendants' statements that it is not a clean place to eat and people eating there have developed ptomaine poisoning. The law presumes injury from such statements, they being actionable per se if unprivileged. When a plaintiff has established such a slander he has made out a prima facie case. However, he may desire to prove actual

damages in support of the legal presumption of damage (see Odgers, Libel and Slander (5th ed.) pp. 387, 388) in order to influence the jury to return a larger verdict. Proof of diminution in the business slandered beginning immediately after the defamation carries with it the presumption that this is a general damage flowing directly from the tort, but any diminution to any unrelated business of the plaintiff, in no way connected with the slandered business, is not such a general damage. There can be no presumption that the diminution of such an unrelated business flowed directly from the tort.

The contention that the grocery store and service station were related businesses within the meaning of that term as applied to this case because they were in the same building and operated by the same people is without merit. The slander declared upon was aimed at the restaurant; that it was not a good place to eat, and that people who had eaten there had become ill from eating the food served at this restaurant. It is not alleged or shown by the evidence that these slanderous remarks adversely affected the service-station business and the grocery business. Diminution in these businesses is not presumed to flow from the tort. If the slanderous remarks aimed at the restaurant adversely affected the revenue from the service station and grocery store, the manner thereof must be alleged and such allegations supported by evidence.

The plaintiff here offered evidence of actual damages consisting of diminution of profit not only to the business slandered but of two unrelated business activities as well. The presumption of damage attaching to the former does not attach to the latter two, and, as to them, any damage is an item of special damage which must be pleaded and proved, and the plaintiff must also show that such damage was in fact the result of the slanderous words. The testimony of Ralph Wilson as to his earnings for the years 1946, 1947, 1948 and 1949 included earnings in no way related to the subject-matter of this suit, and probably influenced the jury in assessing damages to the detriment of the defendants. This error requires a reversal of the case.

■ The general grounds raise only the question of whether the verdict is authorized by the evidence, and will not be passed upon, as this case is to be tried again. Some of the questions

discussed under the general grounds by counsel for the plaintiffs in error are such as would require special assignments of error to be passed upon by this court.

The trial court erred in overruling the motion for a new trial for the reasons set out in division 8 hereof.

*Judgment reversed. MacIntyre, P.J., and Gardner, J., concur.*