67754. SOFATE OF AMERICA, INC. v. BROWN et al.

BENHAM, Judge.

Appellant, Sofate of America Inc. ("Sofate"), was a corporation organized in 1980 for the purpose of importing European-made oriental rugs for resale in North and South America. Appellee Brown was the vice-president of sales for Sofate. In mid-1981, Sofate decided to sell its assets and Brown so informed appellees Carl Puryear, Pierre Van Menxel ("Pierre"), and Luciaan Van Menxel ("Luciaan") on July 19, 1981, at a carpet industry meeting in Atlanta. Puryear and Pierre had formed appellee International Classics, Inc. ("ICI") in March 1981 to import oriental rugs into the United States, and Luciaan owned Eurotex of Belgium P.V.B.A., a Belgian entity which exported rugs to this country. Puryear and the Van Menxels discussed purchasing Sofate's assets with the principal stockholders of Sofate. Concerned about his future due to the effort to sell Sofate, Brown accepted ICI's offer of employment in late July 1981. Talks concerning the possible sale of Sofate's assets to ICI continued until mid-August 1981 when ICI determined that it was not interested. By that time, ICI was selling imported oriental rugs to some of appellant's former customers; Eurotex was purchasing rugs from Sofate's former suppliers and selling them to ICI; an industry advertising circular had informed its subscribers that Sofate was now ICI and that all orders should be directed to ICI's address; and Sofate had broken off negotiations of the sale of its assets with another company.

In January 1982, appellant filed suit against appellees alleging that appellees had entered into a conspiracy and had: tortiously interfered with Sofate's business relationships (Count 1); maliciously interfered with several of Sofate's contractual relationships (Count 2); practiced fraud and deceit (Count 3); committed libel and slander (Count 4); violated the duties of a corporate officer (Count 5); breached a contract (Count 6); displayed wilful and wanton conduct (Count 9); and infringed on appellant's trademark (Count 10). Appellant also sought attorney fees for bad faith and stubborn litigiousness (Count 7), as well as punitive damages (Count 8). The trial court granted summary judgment to appellees Puryear, Pierre, and Luciaan on all counts, dismissing the complaint against them, and granted summary judgment to appellees Brown and ICI on Counts 2, 3, 4, 6, and 10. This appeal ensued.

1. Much of appellant's position in this appeal rests on its assertion that appellees were involved in a conspiracy to damage Sofate so as to render it insolvent. Appellant contends that it presented sufficient evidence of a conspiracy to warrant denial of appellees' various motions for summary judgment. It asserts that an inference of conspiracy was raised by evidence that appellees "appropriated" ship-

ments of rugs destined for Sofate, and conferred on the business affairs, financial condition, sales, customers, styles and tradenames of Sofate.

"A civil conspiracy has been defined as a combination between two or more persons to do some unlawful act which is a tort or else to do some lawful act by methods which constitute a tort." *Summer-Minter v. Giordano*, 228 Ga. 86 (1) (184 SE2d 152) (1971). " ' "The averment of a conspiracy in the declaration does not ordinarily change the nature of the action nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully. Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." ' [Cits.] Thus, a 'conspiracy' to effect what one has a legal right to accomplish is not actionable. [Cits.]" *McElroy v. Wilson*, 143 Ga. App. 893 (2) (240 SE2d 155) (1977). We now turn to an analysis of the acts which appellant claims appellees conspired to commit.

Appellant contends that appellees maliciously interfered with its contract of employment with appellee Mike Brown. See OCGA § 51-12-30. Appellant admits that it and Brown did not enter into a written contract of employment and no restrictive covenants not to compete were a part of the oral employment contract. (We note, parenthetically, that the Supreme Court has held that a post-employment covenant restricting an employee from competing with the employer must be in writing. *Pope v. Kem Mfg. Corp.*, 249 Ga. 868 (1) (295 SE2d 290) (1982).) Thus, Brown's contract of employment with Sofate was unrestricted and terminable at will by either party.

Even if appellees induced Brown to leave Sofate, "the tort of interference with contractual relations does not lie where a privilege exists which exempts such competition for employees from that claim." *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 666 (242 SE2d 135) (1978). If the following standards set out in Restatement, Torts, § 768 are not violated, the privilege is established and the allegation of tortious interference must fail: (1) the relation concerns a matter involved in the competition between the actor and the competitor; (2) the actor does not use improper means; (3) the actor does not intend thereby to create or continue an illegal restraint of competition; and (4) the actor's purpose is at least in part to advance its interests in competition with the other. Id. In his deposition, Brown stated that he sought employment with ICI because he was insecure about his future with Sofate, and Puryear stated in his deposition that ICI had interviewed a non-Sofate employee for the position eventually filled by Brown. Compare *Nager v. Lad 'N Dad Slacks*, 148 Ga. App. 401 (3) (251 SE2d 330) (1978). Since appellant failed to rebut the evi-

dence which appellees used to pierce appellant's pleadings on the subject, summary judgment was appropriate on that issue.

2. Sofate also maintains that appellees maliciously interfered with the oral exclusive contracts it had with two European rug suppliers, Tapis-Vizir and Devos-Caby. We note that Walter Devos, the owner and general manager of Devos-Caby, stated in his deposition that his company had never entered into an oral or written contract for the exclusive sale or distribution of rugs with Sofate or any of its principals. In an affidavit, Jean Pierre Busschaert, the manager of Tapis-Vizir, stated that while his company had had such an agreement with Sofate, he had informed appellant in April 1981 that it had breached the contract when Tapis-Vizir had experienced difficulties in collecting the funds due it from appellant. Thus, since April 1981 no contract of exclusivity had been in existence between Tapis-Vizir and appellant. More importantly, both Devos and Busschaert emphatically stated that none of the appellees had attempted to interfere or influence him or his company with regard to any relationship the company might have had with Sofate. Since there was unrebutted evidence that appellees had not interfered with any exclusivity contract Sofate might have had with Devos-Caby or Tapis-Vizir, the trial court did not err in granting summary judgment on Count 1 to all appellees.

3. Appellant argues that there was evidence of fraud and deceit on the part of appellees. Appellant maintains that appellees promised to buy Sofate's assets knowing they would not perform that promise. "The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. [Cits.] Nor does actionable fraud result from a mere failure to perform promises made. [Cit.] 'Otherwise any breach of a contract would amount to fraud.' [Cit.]" *Lively v. Garnick*, 160 Ga. App. 591 (3) (287 SE2d 553) (1981). An exception to the general rule has been carved out by appellate decisions which hold that fraud may be predicated on a promise as to future events made with a present intent not to perform or where the promisor knows that the future event will not take place. Id.

Sofate bases its allegation of fraud on the fact that appellees did not purchase Sofate's assets and on two telexes sent by Sofate's American-based principal to his European counterpart. By means of the telexes, the American principal informed the European principal that he had told Puryear that Sofate had not taken the deal allegedly offered by another company allegedly interested in purchasing Sofate's assets, and that he had planned a meeting with Puryear and Pierre "to finalize everything." In his deposition, the American principal of Sofate testified that appellees "expressed an interest" in buying Sofate and that negotiations would be finalized after Luciaan had talked with Sofate's European principal. In their depositions, both

Puryear and Luciaan agreed that each had expressed an interest in looking into the possibility of purchasing Sofate's assets, but both denied ever having committed himself to such a purchase. Puryear said that he repeatedly asked for a financial statement on Sofate to no avail, and Luciaan lost interest after he had determined that appellant had nothing more than "a bag of air" for sale. There being no evidence of a promise made by any appellee to purchase Sofate or its assets, much less a promise made with knowledge that it would not be performed, the trial court did not err in concluding that there was no factual basis for appellant's fraud claim and in granting summary judgment to all appellees. See OCGA §§ 51-6-1 and 51-6-2.

4. In a related count, appellant averred that appellees had entered into an oral agreement to purchase Sofate's rug business for $150,000 and had refused to perform, thereby entitling appellant to damages for breach of contract under OCGA § 13-6-1. As noted above, since there was no evidence of a contract for such a sale, there was no error in granting summary judgment to all appellees on the claim of breach of contract.

5. Sofate alleges that the actions taken by appellees to induce Brown to leave Sofate, and the appropriation by appellees of Sofate's customer lists, goodwill, and business opportunity violated OCGA § 14-2-153 and entitled appellant to damages.

The purpose of OCGA § 14-2-153 is "to lay down broad guidelines as to when actions may be brought against *directors and officers* for wrongs suffered by the corporation" (of which the defendant is or was a director or officer). (Emphasis supplied.) See Comment to OCGA § 14-2-153. Thus, the first step in a successful § 14-2-153 suit is the establishment of a defendant as an officer or director, present or former, of the suing corporation. *Southeast Consultants v. Mc-Crary Eng. Corp.*, 246 Ga. 503 (1, 2) (273 SE2d 112) (1980). It is apparent from the record that Sofate concedes that ICI, Puryear, Pierre, and Luciaan are not and were not Sofate's officers or directors. Instead, appellant focuses its attention on Brown, its former vice-president of sales, claiming that he was an officer of Sofate. Brown, however, executed an affidavit in which he swore that he had never served as an officer of Sofate, that no one had ever advised him prior to the inception of this litigation that he was an officer of Sofate, and that he had never taken any action as an officer of appellant. The contents of this affidavit are contested by the assertion of Sofate's American principal in an affidavit that Brown was an officer of Sofate. The question of whether or not Brown was an officer could be resolved by reviewing the minutes of shareholder and board of directors meetings. See OCGA § 14-2-150. While that material was the subject of a motion to produce documents, and was apparently produced, copies were not made a part of the record. Thus, in reviewing the grant of sum-

mary judgment to appellees, we must consider Brown an officer of Sofate and conclude that a suit filed pursuant to § 14-2-153 was a valid avenue by which Sofate could pursue appellees.

OCGA § 14-2-153 prohibits a former corporate officer "from appropriating, in violation of his duties as a fiduciary, his former employer's business opportunities existing at the time of resignation." *Southeast Consultants v. McCrary Eng. Corp.*, supra, p. 507. "Assuming that [Brown] was an officer of [Sofate], the initial question is whether the [solicitation of customers] of [Sofate] constitutes a 'business opportunity.' Only if we answer affirmatively must we address the issues of whether [Brown] violated any of his fiduciary duties in relation to these 'opportunities' while he was an officer." *Singer v. Habif, Arogeti & Wynne*, 250 Ga. 376 (2) (297 SE2d 473) (1982). "In *McCrary*, supra, the court adopted the 'interest or expectancy' test for identifying a business opportunity. A business opportunity arises from a 'beachhead' consisting of a legal or equitable interest or an 'expectancy' growing out of a pre-existing right or relationship. [Cit.] . . . Here, although . . . [Sofate] had dealings of long standing with the customers in question and even though the sales to these customers accounted for a large part of the business of [Sofate], there was no contractual arrangement between them and they were not the exclusive customers of [Sofate]. Further, the opportunity suggested was an ongoing relationship with no finite aspect. We find that under the facts of this case the customers of [Sofate] did not constitute business opportunities. This being so, we need not reach the question whether [this defendant] breached any fiduciary duty owed [Sofate]." *United Seal &c. v. Bunting*, 248 Ga. 814, 815-816 (285 SE2d 721) (1982). See also *Singer v. Habif, Arogeti & Wynne*, supra. The trial court did not err in granting summary judgment to appellees in Count 5.

6. In the last count in which all appellees were granted summary judgment (Count 10), appellant alleged that appellees' "unauthorized use of Sofate's tradestyle, tradenames, and numbers with respect to the sale of its rugs" violated OCGA § 23-2-55. This allegation apparently stems from the fact that the rugs sold by ICI had the same names and order numbers as those formerly sold by Sofate. However, Luciaan testified that all the names and numbers had been given the various rugs by their manufacturers and were the property of the rug manufacturers, and this testimony was not rebutted. Since there was no evidence that ICI's use of the names and numbers which were also used by Sofate was a "passing off or attempting to pass off on the public the goods or business of one person as and for the goods or business of another" (*Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205, 212-213 (190 SE 777) (1937)), the trial court did not err in granting summary judgment to appellees.

7. We now turn to review those counts in which the trial court

granted summary judgment to Puryear, Pierre, and Luciaan while denying summary adjudication to ICI and Brown. Those counts allege the torts of interference with business relationships, libel, and slander, and seek punitive damages as well as attorney fees for bad faith and stubborn litigiousness.

The allegations of tortious interference with business relationships, libel, and slander all arise from the same set of facts. On August 10, 1981, shortly after he was employed by ICI, appellee Brown sent a letter on ICI stationery to Retailers Marketing Guild, the publisher of an advertising circular, advising the addressee that Sofate's name and address had been changed to that of ICI. Retailers Marketing Guild subsequently sent out a catalog containing that information to its member stores and urged them to send their orders to the new address.

On deposition, Puryear testified that he had never authorized anyone to say that Sofate had merged with or changed its name to ICI, and he specifically stated that Brown's action in sending the letter on behalf of ICI was an unauthorized act; Pierre testified that he did not become aware of the offending letter until appellant filed this lawsuit; and Luciaan stated that he knew nothing about Brown's communication concerning a merger of Sofate and ICI. Brown said that his secretary had typed and signed the letter and that he had not discussed the contents with Puryear or Pierre. The trial court concluded that the facts presented a question for the jury as to whether Brown, while acting in the employ of ICI, had maliciously injured Sofate's business by sending the letter to Retailers Marketing Guild. We agree.

"It is a rule of law of universal application that whenever one person commits a wrong upon the person, property, or reputation of another, which is accompanied with damage, the latter may maintain an action. The privilege of free speech does not confer upon one individual the right to use that privilege to the injury of another, and if one prints or publishes words concerning another, or his business, which are themselves false, the law will presume that it was done maliciously, and award damages accordingly." *Ajouelo v. Auto-Soler Co.*, 61 Ga. App. 216, 221-222 (6 SE2d 415) (1939). Since appellees Puryear, Pierre, and Luciaan denied by affidavit knowledge of the letter and, as discussed in Division 1, there was no evidence of a conspiracy through which the action of Brown and ICI could be imputed to them, the trial court did not err in granting summary judgment to Puryear, Pierre, and Luciaan in Counts 1 and 4.

8. The trial court correctly observed that questions of fact, dependent upon the jury's resolution of Counts 1 and 4, remained insofar as the counts seeking punitive damages and attorney fees were concerned. Thus, summary judgment was appropriately denied Brown

and ICI. Again, there being no evidence of conspiracy, summary judgment was appropriately awarded Puryear, Pierre, and Luciaan.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED MAY 18, 1984.

*L. Hugh Kemp, H. Greely Joiner, Jr.,* for appellant.

*Joseph T. Tuggle, Jr., John P. Neal III, J. Michael Brown,* for appellees.