69271, 69272. SAVANNAH BANK & TRUST COMPANY
v. SUMNER et al.; and vice versa.
(329 SE2d 910)

McMURRAY, Presiding Judge.

In May of 1977 appellee Sumner, the president and sole stockholder of appellee Savannah/Sumner Company (Savannah/Sumner), an advertising and marketing company, entered into a written contract with Walton K. Nussbaum, the president and chief executive officer of appellant Savannah Bank & Trust Company (the bank), to perform advertising and promotional functions for the bank. The initial contract provided compensation to Savannah/Sumner in the amount of $2,000 a month, which was raised to $2,500 in 1979. In August of 1980 Sumner approached Thomas P. Rideout, the new president and chief operating officer of the bank, to negotiate another

---

contract. Discussions of the proposed contract took place until March 1981. At that time Rideout decided, and recommended to Nussbaum, that the bank discontinue utilizing the services of Savannah/Sumner even though its advertising campaign for the bank had won several national awards. Rideout felt that Sumner's request for compensation of $106,000 a year was too high; that the working relationship between Savannah/Sumner and the bank's marketing department was poor; and that Sumner had a high personnel turnover in the company which made the relationship with the bank "unproductive." Nussbaum agreed that the contract should be terminated. The contract contained a clause providing for termination at will by either party upon 90 days notice in writing.

At the end of March, before the decision to terminate the contract had been communicated to Sumner, Sumner told Rideout that he was undergoing psychiatric treatment in Atlanta three days a week, and that for this reason he had opened an Atlanta office in 1980. Sumner told his psychiatrist that his purpose for revealing this information was to appeal to Rideout's "humanity," to "help negotiations along . . ." Sumner suggested to Rideout that he could arrange a meeting with his psychiatrist if it would be useful in working out any problems in the contract negotiations. Rideout was concerned about the emotional impact the termination might have on Sumner, and he and Nussbaum decided that Sumner should be informed of the termination in the psychiatrist's presence. Rideout then obtained the psychiatrist's name, Dr. Bernard Holland, and called to arrange a meeting at his office at Emory University on April 6, 1981. Although Rideout thought that Dr. Holland was made aware of the decision to terminate Savannah/Sumner, Dr. Holland testified that this subject was not discussed; that he was told by Sumner that the meeting was for the purpose of resolving conflicts in the negotiations for a new contract, and that he became involved only to assure Rideout that Sumner was capable of carrying on his normal work functions. At Dr. Holland's office Rideout informed Sumner of the decision to terminate the contract and stated his three reasons for doing so. Afterwards Sumner and Rideout had lunch together in Atlanta and they returned to Savannah that afternoon.

Appellees filed the instant action against the bank on October 13, 1981, seeking in Count 1, as amended, $30,000 for alleged fraudulent misrepresentations in the contract negotiations and $70, the cost of the psychiatrist's office visit, for fraudulently assuring Sumner that the purpose of the visit was not to interfere with his continued employment. Count 2 sought $250,000 for defamation and Count 3 was for $1,160, arising out of deduction of improper amounts due upon termination of the employment contract. One million dollars in punitive damages plus attorney fees were also sought. The case was tried

before a jury and the bank's motions for directed verdict as to all three counts were denied. The jury returned a verdict for appellees, awarding $1,160 on the breach of contract claim, and $70 general damages and $125,000 punitive damages for the alleged fraud concerning the Atlanta trip. No recovery was allowed on the defamation count. The bank's motion for judgment notwithstanding the verdict or for new trial was denied and this appeal was brought. Sumner and Savannah/Sumner have filed a cross-appeal for the purpose of preserving certain issues in the event of reversal for a new trial. *Held*:

1. Appellees' allegations of fraud and deceit and claims for actual and punitive damages were based upon two purported false representations to Sumner by appellant: "that (1) a new agreement was to be consummated forthwith, and that (2) the purpose of the Atlanta trip was to assure [the bank] that [Sumner's] claim for medical attention was sound . . ." However, "the evidence demands a finding that [appellees have] not presented the elements of an action in fraud and deceit. The five elements necessary to be shown are that the misrepresentation or falsehood was knowingly made, that it related to a material fact, that its purpose was to deceive another and induce him to act, that he did act upon it and that he was injured as a result." *Day v. Randolph*, 159 Ga. App. 474, 475 (283 SE2d 687) (1981).

There was no evidence here of any intention on the part of the bank to harm or injure appellees, or that they were in fact injured as a result. Rideout testified that the news that Sumner was seeing a psychiatrist bothered him because he was concerned about the emotional impact the loss of the business relationship would have on Sumner, and that he would not have made the trip to Atlanta had it not been his understanding that Dr. Holland "thought it would be a good way to proceed." Had Rideout told Sumner that the purpose of the Atlanta trip was to terminate the contract in a supportive environment, the reason for setting up the meeting would have been defeated. Sumner merely assumed that the trip was being made for the reason he had told Rideout of his problems in the first place, and Rideout was under no duty to apprise him otherwise. See *Citizens Bank, Vienna v. Bowen*, 169 Ga. App. 896 (1) (315 SE2d 437) (1984); *Hall v. Richardson Homes*, 168 Ga. App. 593 (309 SE2d 825) (1983).

Moreover, "[u]nder Georgia law the promise allegedly made by [appellant] is unenforceable and cannot form the basis for fraud. 'It is well settled that "[a]lthough fraud can be predicated on a misrepresentation as to a future event where the defendant knows the future event will not take place . . . fraud cannot be predicated on a promise which is unenforceable at the time it is made." [Cit.] And this is controlling in the instant case "because the promises . . . upon which the promisee [appellees] relies for establishing fraud were unenforceable even absent any fraud at the time of their utterance. The oral

promises could not be enforced because the underlying employment contract, being terminable at will, is unenforceable." [Cit.]' [Cits.]" *Phillips v. Liberty T. V. Cable*, 166 Ga. App. 411 (304 SE2d 516) (1983). See also *West Va. Glass Specialty Co. v. Guice & Walshe*, 170 Ga. App. 556, 557 (1) (317 SE2d 592) (1984); *Sofate of America v. Brown*, 171 Ga. App. 39, 41 (3) (318 SE2d 771) (1984). Although appellees were entitled to the actual damages awarded for breach of the provisions of the termination clause in the contract, from which no appeal was taken, they did not prove fraud so as to entitle them to actual or punitive damages. It follows that the trial court erred in failing to grant appellant's motion for directed verdict on the fraud claim.

2. In the cross-appeal it is contended that the trial court erred in ruling inadmissible evidence of prior and subsequent "acts of hostility" of employees of the bank for the purpose of showing malice and for impeachment in proving that a defamation and fraud occurred on April 6, 1981. The excluded testimony involved an allegedly false statement made by Nussbaum in 1977 that Sumner had been treated as an alcoholic, requests by Sumner for recommendations from Nussbaum which he refused to give after the bank terminated the employment contract, and termination of a lease agreement in October of 1982 for office space in the bank.

"A charge made against another in reference to his trade, office, or profession, calculated to injure him therein, is actionable per se unless made under circumstances which constitute it a privileged communication, such as in the performance of a public duty, or a private duty, either legal or moral, or with a bona fide intent on the part of the speaker to protect his own interest in a matter where it is concerned. The burden is on the defendant to establish this defense. If the communication is conditionally privileged there can then be no recovery unless the privilege is used merely as a cloak for the venting of private malice. In this event the burden is on the plaintiff to show actual malice, and he may do so by introducing in evidence extraneous circumstances which show an actual spite, ill will or desire to injure the person defamed." *Van Gundy v. Wilson*, 84 Ga. App. 429-430 (1 (a)) (66 SE2d 93) (1951). As further explained in the *Van Gundy* decision, such testimony as to extraneous hostile acts by the defendants, while "not relevant to prove the slanderous utterance may thus be relevant upon the question of malice in that it is competent to show the state of mind of the parties *at the approximate time of the remarks*, and is of probative value." (Emphasis supplied.) Ibid. at 433. See also *Davidson v. Walter*, 97 Ga. App. 118, 121 (2) (102 SE2d 686) (1958), rev'd on other grounds, *Walter v. Davidson*, 214 Ga. 187 (104 SE2d 113) (1958). We agree with the trial court that the extraneous evidence sought to be admitted by cross-appellants, including

hearsay statements attributed to Nussbaum, was neither timely nor pertinent as to the issue of malice in any alleged defamatory remarks uttered by Rideout at the April 6, 1981, meeting.

3. Cross-appellants complain that the trial court improperly excluded testimony that the bank wanted to be Savannah/Sumner's sole client. However, the trial transcript reveals that responses to this question were made on both direct and cross-examination. Thus, regardless of the relevancy of such evidence, this enumeration is without merit.

4. Any error which the trial court may have committed in regard to allowing evidence on the issue of attorney fees was harmless because no attorney fees were awarded, and cross-appellants have failed to show how they were prejudiced by such evidence.

5. The court's instruction on qualified privilege in regard to the defamation count was a correct statement of the law as found in OCGA § 51-5-7 (2), and was adjusted to testimony that the decision to disclose the reason for terminating the contract in the presence of Dr. Holland was made in Sumner's best interests. See *Jones v. J. C. Penney Co.*, 164 Ga. App. 432 (297 SE2d 339) (1982); *Cochran v. Sears, Roebuck & Co.*, 72 Ga. App. 458 (34 SE2d 296) (1945).

6. It is unnecessary to consider cross-appellants' enumerations of error concerning the court's instructions to the jury that fraud could not be based upon promises or agreements as to future acts, in view of the determination made in the main appeal that there was no factual basis for a cause of action in fraud. See *Sofate of America v. Brown*, 171 Ga. App. 39, 41 (3), supra.

*Judgment affirmed in part and reversed in part in the main appeal (Case No. 69271). Judgment affirmed in the cross-appeal (Case No. 69272). Deen, P. J., and Carley, J., concur. Sognier, J., disqualified.*

DECIDED MARCH 12, 1985 —
REHEARING DENIED MARCH 28, 1985 —

*Malcolm R. Maclean, Roland B. Williams*, for appellant.
*W. Jan Jankowski, Charles W. Brannon, Jr.*, for appellees.